**D. HOUSTON, INC., d/b/a Treasures, Petitioner,**

v.

**Melissa LOVE, Respondent.**

No. 00–1192.

Supreme Court of Texas.

Argued Sept. 5, 2001.

Decided June 27, 2002.

Diane M. Guariglia, Beirne Maynard &
Parsons, Beth McCahill Taylor, Taylor &

Taylor, Joseph Todd Trombley, Michael W. Blaise, Lorance & Thompson, Houston, for Petitioner.

David E. Chapin, Houston, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court.

In this case, an independent contractor sustained injuries in an alcohol-related automobile accident after her employer,[1] a commercial seller of alcohol, allegedly required her to consume alcohol on the job. We must determine whether the Texas Dram Shop Act provides the exclusive remedy for suing a commercial seller of alcohol in such a situation.

We conclude that the Dram Shop Act does not abrogate a commercial seller's common law duties as an employer to its employees and independent contractors. Further, we conclude that if an employer requires its independent contractor while working to consume alcohol in sufficient amounts to become intoxicated, it owes her a duty to take reasonable care to prevent her from driving when she leaves work. Because the employer has failed to negate this duty as a matter of law, we affirm the judgment of the court of appeals. 67 S.W.3d 244.

I

At approximately 7:45 p.m. on October 6, 1996, Melissa Love completed her day-shift as a waitress at Treasures night club and began working at the same location as an exotic dancer. The parties agree that her status changed at that point from employee to independent contractor. While working as a dancer, Love consumed at least twelve alcoholic beverages with the customers and became intoxicated. She performed her last table dance at about 1:00 a.m. As Love was leaving Treasures about thirty minutes later, the club manager asked if she was alright. She replied that she was "fine." But while Love was driving herself home, her car struck a guardrail and she suffered serious personal injuries. At 4:00 a.m., Love's blood alcohol level as measured at the hospital was .225, more than twice the then-applicable .10 legal limit. Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3696, amended by Act of May 28, 1999, 76th Leg., R.S., ch. 234, § 1, 1999 Tex. Gen. Laws 1082 (revising legal limit to .08).

Treasures offered its manager's affidavit testimony that he did not notice any signs of intoxication when Love left the bar to drive home, and it is undisputed that no one at Treasures attempted to keep her from driving. Treasures also offered Love's deposition testimony that when she left the club she had not had a drink since about 11:00 p.m., when she felt intoxicated and accidentally fell on a customer during a private table dance. She testified in that deposition that by 1:30 a.m. she felt competent to drive a motor vehicle. However, Love offered a doctor's affidavit that if her blood alcohol level was still .225 at 4:00 a.m., it would have been so high that she would have had trouble standing or walking when she left Treasures. The affidavit concluded: "Ms. Love would have been unmistakably intoxicated to anyone coming into contact with her and would have presented [as] a young woman well beyond being too intoxicated to drive."

Love sued Treasures under Chapter Two of the Texas Alcoholic Beverage Code, commonly called the Dram Shop

---

1. In this opinion, we use the word employer to identify a person or entity that either contracts for the services of an independent contractor or employs the services of an employee. See, e.g., RESTATEMENT (SECOND) OF TORTS § 414.

Act, and for common law negligence and gross negligence. Treasures moved for partial summary judgment on the Dram Shop claims, asserting that it had satisfied the "trained-server" statutory defense, Tex. Alco. Bev.Code Ann. § 106.14 (Vernon Supp.2002), and that it had established as a matter of law that Love was not "obviously intoxicated to the extent that [she] presented a danger to [herself] and others" at the time Treasures served her alcohol. *Id.* § 2.02(b)(1). The trial court granted the motion only on the "trained-server" defense, making no reference to Treasures' no-obvious-intoxication defense. In a second summary judgment motion, Treasures claimed that Love's common law claims were barred because the Dram Shop Act is the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older. *Id.* § 2.03. The trial court also granted this motion and ordered that Love take nothing in her suit against Treasures. Love appealed the second summary judgment only.

The court of appeals reversed and remanded, extending *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), to hold that an employer who asserts control over an independent contractor with knowledge of his or her incapacity has a duty to exercise reasonable care to ensure that the independent contractor does not cause an unreasonable risk of harm to herself or others. Concluding that fact questions existed about Treasures' knowledge and control, the court reversed the summary judgment, and Treasures appealed.

## II

Treasures first argues that the Dram Shop Act's exclusivity clause bars all common law causes of action against commercial sellers of alcohol for any conduct that in some way involves providing alcohol. If that is correct, then the court of appeals'

judgment must be reversed and rendered, because Love did not appeal the trial court's summary judgment on her statutory claims.

Section 2.03 of the Dram Shop Act states:

> The liability of providers under this chapter for the actions of their customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages. This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter. This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.

Treasures says that the "exclusive cause of action" language in the last sentence clearly bars any common law or other statutory basis for liability for providing alcohol to an adult, regardless of to whom or under what circumstances. Love replies that her cause of action is not barred because independent contractors are not included in the statutory class of "customers, members, or guests." Love's argument is unnecessary and Treasures' is incorrect, because the duty in this case arises from the employer-independent contractor relationship, not from Treasures' provision of alcohol.

The Dram Shop Act was clearly intended to pre-empt common law claims against commercial sellers of alcohol for claims that arise from the sellers' provision of alcohol. However, we conclude that it does not bar all common law liability for any conduct by a seller toward its employee or independent contractor whenever alcohol is involved. The duty underlying Love's cause of action is derived from Treasures' alleged failure to use reasonable care in exercising its retained control over its independent contractor's work.

*See Exxon Corp. v. Quinn,* 726 S.W.2d 17, 20 (Tex.1987). In this case, if Treasures were merely an exotic night club that did not sell alcohol, the statute would not bar Love's common law claims. Nor, if the alcohol had not been purchased from or supplied by Treasures, would the statute bar her common law claims against Treasures.

Thus, Love is not suing Treasures as a "provider" under the Dram Shop Act. Instead, she is suing Treasures as her employer for failing to use reasonable care in exercising its retained control over her work as an independent contractor. Therefore, the Dram Shop Act, which "provides the exclusive cause of action for *providing* an alcoholic beverage to a person 18 years of age or older," TEX. ALCO. BEV.CODE ANN. § 2.03 (Vernon 1995)(emphasis added), does not bar Love's common law claims as an independent contractor against her employer.

### III

■ A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Proximate cause requires both cause in fact and foreseeability. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 755 (Tex.1975). Foreseeability exists when "the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others." *El Chico Corp.,* 732 S.W.2d at 313.

■ An employer may breach a duty to its independent contractor by failing to exercise its retained control over the contractor with reasonable care. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 20 (Tex. 1987). An employer may retain control either by contract or by exercising actual control over the contractor's work. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex.1999). When disputed, control is an issue for the trier of fact. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex.1990).

■ Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). In reviewing a traditional motion for summary judgment, such as the one granted to Treasures here, the reviewing court must resolve every doubt and indulge every reasonable inference in the nonmovant's favor. *Id.* at 549. All evidence favorable to the nonmovant will be taken as true. *Id.* at 548–49. In appealing the court of appeals' reversal of the trial court's summary judgment, Treasures must disprove as a matter of law at least one essential element of each of Love's theories of recovery. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

### A

■ Treasures argues that even if the statute does not foreclose this suit, it did not exercise sufficient control over Love as a matter of law to create a legal duty. We disagree. Love offered summary judgment evidence to support her contention that Treasures exercised control over her alcohol consumption as an independent contractor, and it is undisputed that Love's on-the-job alcohol consumption was a proximate cause of her injuries.

Love, who also worked at Treasures as a waitress, testified that Treasures instructed its waitresses to take specific steps to increase the number of alcoholic drinks that customers bought for dancers. Al-

though Treasures offered its "Waitress Manual" as summary judgment evidence of its written advice to waitresses that it is illegal to ask a customer to buy a drink for a club employee or dancer, the manual's "Salesmanship" section instructs waitresses:

> Ask the customer if he'd like you to get a dancer for his table. Customers will buy drinks for dancers and buy dances from them, resulting in a larger tab.

The manual also advises them to get to know their customers' tastes, including the dancers they like, pointing out that "[l]arger guest checks will of course typically lead to larger tips."

Love offered her own affidavit testimony as follows:

> Waitresses at Treasures are instructed to never let a customer and a dancer who is entertaining him sit around with an empty drink. Waitresses are instructed to ask the customer if he would like anything, and to also ask the customer if the lady would like anything. By doing this, the club makes more money on alcohol sales.

In her deposition testimony, offered as part of Treasures' summary judgment evidence, Love testified that waitresses were required to sell a certain number of alcoholic drinks. When she worked as a waitress, she would report a dancer to management who did not drink alcohol because it hurt her own liquor sales. Love also testified in her deposition that Treasures' management directly pressured its dancers to drink alcohol with customers:

> [The manager] will ask the dancer, "You're going to sit with this guy and drink water all night? You're not making any money for the club."
>
> And it has happened where they will get in your face and they will tell you, you know, "If you're going to sit with the customer and drink a Coke, then you need to go with another customer," because that's the way Treasures is making their money . . .
>
> She [the dancer] wasn't forced [to drink alcohol]. But if she wanted to keep her job, she'd better—she needs to drink.

The summary judgment evidence, most of it offered by Treasures, shows that a dancer's income could be significantly reduced if she were forced to leave a high-spending customer's table and sit elsewhere—to "go with another customer," in other words. Waitresses were instructed to encourage customers to start a tab for drinks they ordered from the bar and table dances they ordered from exotic dancers. When a dancer spent time with a customer at his table, she and the bar both benefited. Customers paid $25 for each table dance, of which the dancer received $20 and the bar kept $5. The bar could increase its drink sales if the customer bought drinks not only for himself, but also for the dancer, and the bar kept five percent of any tips the customer paid the dancer. The dancer did not receive a cut of the customer's liquor purchases. Love testified that the night of the accident, she performed about twenty-five table dances, including ten for a single customer, who had been a customer at the bar Love worked at before beginning work at Treasures. Thus, about forty percent of Love's income that night came from only one customer. Over the course of the evening, that customer bought at least half of the approximately twelve drinks that Love consumed. It is reasonable to infer from this testimony that Treasures indeed had an incentive to ask dancers to drink alcohol purchased for them by customers, and that the dancers had an incentive to comply with Treasures' instructions in order to sit with high-spending customers who would order both drinks for the dancer,

profiting only the bar, and table dances from the dancer, profiting both the bar and herself.

Love testified that during her shift as an exotic dancer on the night before the accident, she only consumed alcohol purchased for her by customers, never asking a customer to buy her a drink. When asked in her deposition to admit that she freely chose to order alcoholic rather than non-alcoholic beverages, she replied, "I wanted to keep my job." This testimony, though controverted, raises a fact question regarding Treasures' control over Love's decision to consume sufficient alcohol to become intoxicated.

### B

■ Finally, Treasures argues that Love may not argue at trial that Treasures knew of her intoxication, because she waived the issue when she did not appeal the first summary judgment order. We disagree. The trial court granted summary judgment on Love's Dram Shop claims based only on the trained-server exception, never ruling on Treasures' alternative statutory defense that Love was not obviously intoxicated. Since Love properly appealed the adverse summary judgment on her common law causes of action, she may still argue that Treasures knew she was obviously intoxicated.

### IV

■ It has been argued elsewhere that a person in Love's position should be solely responsible as a matter of law for the consequences of her decision to consume alcohol. When this Court in *Smith v. Sewell*, 858 S.W.2d 350 (Tex.1993), found that the plain language of the Dram Shop Act gave an intoxicated consumer a cause of action against the bar that sold him the alcohol, Justice Gonzalez strongly dissented. He argued that the Court's decision "totally distort[ed] the concepts of individual responsibility and individual choice," *id.* at 358, for an individual who "voluntarily [got] drunk, and on the way home ha[d] a one-car accident which caus[ed] him crippling injuries." *Id.* at 356. "The responsibility [for injuries] should be on the adult intoxicated individual who voluntarily consumed the liquor, not on the alcohol provider." *Id.* at 358; *see also Graff v. Beard*, 858 S.W.2d 918, 921–22 (Tex. 1993)("the imbiber maintains the ultimate power and thus the obligation to control his own behavior: to decide to drink or not to drink, to drive or not to drive.") Under Love's version of the facts, however, her decision to consume alcohol over a four-hour period was not entirely voluntary. If Treasures required Love to consume alcohol at work, it may well have compromised Love's ability to judge whether she was fit to drive. Therefore, we decline to hold as a matter of law that Love bears sole legal responsibility for her actions.

Likewise, some might argue that Treasures could not foresee that its negligence, if any, might have harmed Love. However, Treasures allegedly required its worker to consume alcohol when she might not otherwise have chosen to do so. If proven, that conduct would impose a duty on Treasures under Texas law. We have declined to hold an alcohol provider liable for such injuries in some cases, not because the harm was unforeseeable, but because the defendant had no duty. *See Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex.2001) (social host has no duty not to make alcohol available to minors); *Smith v. Merritt*, 940 S.W.2d 602, 605 (Tex.1997)(social host has no duty to passenger to prevent nineteen-year-old guest from drinking and driving); *Graff*, 858 S.W.2d at 921–22 (social host has no duty to third party to prevent adult guest from drinking and driving); *cf. El Chico Corp. v. Poole*, 732 S.W.2d 306, 311

(Tex.1987)("The risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall.").

Our holding today is congruent with the result in similar cases in other jurisdictions, although those cases involved employees, not independent contractors. *See 2800 Corp. v. Fernandez,* 528 N.W.2d 124, 129–30 (Iowa 1995) ("Work-related intoxication is a hazard of the employment that follows an employee when he or she leaves work. When an employer encourages or condones excessive drinking on the job and in fact profits from an employee's drinking, as in this case, the employer ought to be held responsible for foreseeable injuries suffered by the employee because of the resulting intoxication.") *Siegel v. Jozac Corp.,* Nos. 380664, 385368, 2001 WL 840375, at *3 (Ohio Ct.App. July 26, 2001), *discretionary appeal denied,* 93 Ohio St.3d 1476, 757 N.E.2d 774 (2001)("The [bar] exclusively realized a profit from Ms. Siegel's duty [to drink alcohol]. It cannot then turn a blind eye when that same employee gets into her vehicle and drives home intoxicated, jeopardizing her life and the lives of other motorists.") [2]

V

In holding for Love, the court of appeals extended the doctrine we established in *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983). 67 S.W.3d at 257–58. In *Otis,* we held that, "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreason-

able risk of harm to others." *Otis Eng'g Corp.,* 668 S.W.2d at 311. Because we conclude that Love's claim survives summary judgment on other grounds, we need not decide whether *Otis* should be extended to permit recovery by an independent contractor for her own injuries.

We hold that when an employer exercises some control over its independent contractor's decision to consume alcoholic beverages to the point of intoxication, such that alcohol consumption is required, the employer must take reasonable steps to prevent foreseeable injury to the independent contractor caused by drunk driving. Because Treasures has not carried its summary judgment burden by either demonstrating that it is entitled to judgment as a matter of law or negating one or more elements of each of Love's causes of action, we affirm the judgment of the court of appeals.

---

**2.** Under Rule 2 of the Ohio Supreme Court Rules for the Reporting of Opinions, unpublished opinions of that state's courts of appeals may be cited as persuasive authority.