MARY'S OPINION HEADING 






                                                                                    NO. 12-03-00204-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
SCOTT A. SHULTZ,                                          §                 APPEAL FROM THE 392ND
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

JERRY R. VAUGHT,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            This is an appeal by Appellant Scott A. Shultz (“Schultz”) from a summary judgment granted
in favor of Appellee Jerry R. Vaught (“Vaught”). In two issues, Schultz contends the trial court
erred in granting summary judgment. We affirm.
 
Background
            During the summer of 1997, Shultz discovered that the thirty-three-acre Hamil tract was for
sale. Because of its proximity to Athens, Shultz believed it was an ideal site for the production of
manufactured homes, a business he hoped to start. Shultz did not have the money at that time to
purchase the property but realized that it would soon be sold to someone else. He approached
Vaught with the proposal that Vaught buy the thirty-three acres, but grant Shultz a 120-day option
to buy the property for $15,000 more than Vaught had paid the Hamil Estate. After some initial
reluctance, Vaught agreed to Shultz’s proposal. On August 12, 1997, they signed an agreement
granting Schultz the option of purchasing the tract for $164,990 within 120 days from the date of the
closing of the transaction between the Vaughts and the Hamil Estate. In the event Shultz could not
pay for the property during the term of the option, Shultz was to receive $2,000 as a finder’s fee. 
Vaught acquired the property by deed dated September 11, 1997.
            At the time they made the agreement, Shultz owed Vaught $7,000 on a prior loan. Although
apparently unable at that time to pay off this loan, he asked Vaught to renew the loan and to lend him
another $7,000 for operating expenses in his business. Vaught agreed to extend the payment of the
$7,000 already due upon Shultz’s agreement to pay him $8,000 by October 12, 1997. Vaught also
agreed to lend Shultz $7,000 more upon Shultz’s agreement to pay Vaught $8,000 on or before
September 12, 1997. The agreement evidencing the indebtedness, signed on the same date as the
option agreement, further specified that if Shultz did not pay on or before the dates provided, Shultz
would forfeit the option to purchase the thirty-three-acre Hamil tract.
            Shultz had often borrowed money from Vaught in the past. Although he had always repaid
the loans, Shultz was frequently late in doing so. According to Shultz’s deposition testimony,
however, Vaught reminded him on at least two occasions before September 12, 1997 that he would
forfeit his option if he did not pay on or before the dates agreed upon.
            On the night of September 12, 1997, in payment of the loan due on that date, Shultz
presented Vaught a check drawn on the account of the Faith Tabernacle Church, payable to Shultz
and endorsed by him. The next day the check was dishonored, but the check was paid when Vaught
presented it a second time.
            On Sunday night, October 12, 1997, the due date of the other loan, Shultz was traveling with
his wife. Late that night, Shultz’s father took two checks to Vaught to pay the loan. One was drawn
on the account of the Faith Tabernacle Church, whose other check had been dishonored once. 
Vaught refused to accept the checks. Shultz called Vaught and offered to pay him with a check
drawn by his wife on her account. Vaught’s wife told Shultz they would not accept a check, but
wanted cash. With only minutes remaining before midnight, it was impossible for Shultz to obtain
cash or its equivalent before the due date passed. Shultz paid the loan the next week. Vaught,
however, considered Shultz’s option to purchase the thirty-three acres forfeited because of Shultz’s
failure to timely pay the indebtedness due on October 12, 1997.
            Shultz sued Vaught claiming that Vaught had willfully refused to honor the option agreement
and that he refused to accept the proffered payment on October 12 “to justify his resulting breach of
the option agreement.” He further alleged that “the oral and written representations of [Vaught] have
been, from the outset of this transaction, false, misleading and untrue.” His petition further asserted
that he was “coerced into the option agreement” by Vaught’s false statements and that Vaught’s
conduct constituted actionable fraud.
            Vaught filed a motion for summary judgment, which included both a traditional summary
judgment motion and a no-evidence motion for summary judgment. See Tex. R. Civ. P. 166a(c), (i). 
The court granted Vaught’s motion. In his motion, Vaught asserted that there was no evidence that
he had made a false representation, that Schultz had relied on such a representation, or that Schultz
had suffered injury because of any representation made by him by Vaught.
 
Standard of Review
            A trial court should grant a defendant’s motion for summary judgment if the defendant
disproves at least one essential element of the plaintiff’s cause of action or if the defendant
establishes all the elements of an affirmative defense as a matter of law. D. Houston, Inc. v. Love,
92 S.W.3d 450, 454 (Tex. 2002); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). A
review of a traditional summary judgment is conducted in accord with the following standards:
 
            1.           The movant has the burden of showing that there is no genuine issue of material fact
and that it is entitled to judgment as a matter of law.
 
              2.           In determining if there is a disputed material fact issue, evidence favorable to the
non-movant will be taken as true.
 
              3.           Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.


See Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).
            A no-evidence motion for summary judgment is utilized to challenge the absence of evidence
“of one or more essential elements of a claim or defense on which an adverse party would have the
burden of proof at trial.” Tex. R. Civ. P. 166a(i). The motion must specifically set forth the
elements of the adverse party’s claim or defense for which there is no evidence. Id. The burden then
shifts to the non-movant who must produce more than a scintilla of evidence to raise a genuine issue
of material fact. Haas v. George, 71 S.W.3d 904, 911 (Tex. App.–Texarkana 2002, no pet.). When
a motion for summary judgment is based on several grounds and the order granting the motion is
silent as to the reason the motion was granted, the summary judgment must be affirmed if any of the
theories are meritorious. Star Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).
 
Applicable Law
            The elements that must be proven in order to establish an actionable misrepresentation are
as follows:
 
            1.           A material representation was made;
 
              2.           The representation was false;
 
              3.           The representation was false when it was made, and the speaker knew it was false
or made the statement recklessly without any knowledge of its truth and as a
positive assertion;
 
              4.           The speaker made the representation with the intent that it should be acted upon by
the other party;
 
              5.           The other party acted in reliance upon the representation; and
 
              6.           The other party suffered injury as a result of acting upon the representation.


See Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977); see also DeSantis v.
Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990).
 
Analysis
            Shultz insists that Vaught made a false representation to him knowing it was false and
intending that Shultz act upon it. However, in his response to Vaught’s summary judgment motion,
he does not identify the material misrepresentation. There is absolutely no evidence that any of the
representations made by Vaught to Shultz were false. In our view, Shultz’s summary judgment proof
establishes that no false representation was made.
            Shultz’s own deposition testimony shows that he proposed the option agreement to Vaught. 
There is nothing in the record to show that the option contract they signed on August 12 did not fully
and accurately reflect their agreement.
            In order to extend the time to pay $7,000 already due Vaught and to secure $7,000 more in
operating capital, he signed an agreement on the same date setting out the terms for the repayment
of the indebtedness, and further providing that he would forfeit his option to buy the Hamil tract if
he did not pay on or before the dates specified. Shultz apparently claims that because Vaught had
continued to lend him money in the past despite late payments, he was justified in believing that he
could continue in that habit without suffering the forfeiture spelled out in the agreement. 
            In his deposition, Vaught testified that Shultz generally paid cash and paid late. But Shultz
admitted that he asked for no grace period in the contract. He acknowledged that on at least two
occasions before the September 12, 1997 due date, Vaught warned him that he expected to be paid
on or before the due dates exactly as specified in their agreement. Despite the warnings, Shultz
waited until the night the September 12 payment was due and paid with a check made payable to him
by Faith Tabernacle Church, which was dishonored when Vaught initially presented it, but later paid
by the bank. Next, Shultz waited until the night of the next due date to send his father to Vaught to
pay with two checks payable to and endorsed by him, one of them from the Faith Tabernacle Church. 
Understandably, Vaught refused to accept the checks. There is no evidence that Vaught made a false
material representation.
Injury
            Shultz also failed to produce evidence of any injury as a result of any representation made
by Vaught. In his deposition testimony, he conceded that he never obtained the financing that would
have enabled him to buy the thirty-three acres. As Vaught argues, the only injury he complains of
is that by losing the opportunity to buy the tract, he was forced to forego, or at least postpone, his
dream of operating a facility producing manufactured homes. He had incurred no expense
attributable to the commencement of such an operation, and there is a total lack of evidence that the
business would have been profitable. In his testimony, he said that he might also have resold the
property at a profit, but there is a similar lack of evidence that he could have made a profit on the
resale or what that profit would have been. Shultz failed to present any evidence of injury.
 
Conclusion
            Shultz’s response to Vaught’s no-evidence motion for summary judgment failed to present
more than a scintilla of evidence that Vaught made a material representation knowing it was false
or that Vaught’s actions caused him any legal injury. In the absence of evidence raising a genuine
issue of material fact as to at least two of the elements Shultz was required to establish in order to
recover, the trial court properly granted summary judgment in favor of Vaught.
 
Disposition
            The judgment of the trial court is affirmed. All pending motions are overruled as moot.
 
 
                                                                                                    BILL BASS 
                                                                                                            Justice



Opinion delivered August 4, 2004.
Panel consisted of Worthen, C.J., DeVasto, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.























                                                                    (PUBLISH)