COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JAI JALARAM LODGING GROUP,
L.L.C.        )

d/b/a COMFORT INN-ALVIN,                           )              
No.  08-04-00192-CV

                                                                              )

Appellant,                          )                   Appeal from the

                                                                              )

v.                                                                           )               
239th District Court

                                                                              )

RHONDA E. LERIBEUS and
CHARLES W.       )          of Brazoria County,
Texas

LERIBEUS,                                                           )

                                                                              )               
(TC# 18903-JG02)

Appellees.                          )

                                                                              )

 

 

O
P I N I O N

 

The Jai Jalaram
Lodging Group, L.L.C. d/b/a Comfort Inn-Alvin appeals from a judgment in a
negligence suit, where a jury found Appellant partially responsible for the
injuries Appellee Rhonda LeRibeus sustained in an armed robbery, kidnaping, and
aggravated assault that began in the parking lot of its Comfort Inn motel.  On appeal, Appellant argues that there is no evidence
or insufficient evidence that this crime was foreseeable as required to
establish a legal duty for it to protect Mrs. LeRibeus from the criminal acts
of third parties.  Further, Appellant
contends the evidence was legally or factually insufficient to support the jury=s finding that it proximately caused
Mrs. LeRibeus=
injuries.  We find that we must reverse
and render a take-nothing judgment.








In 1998, Daxaben
Bhakta, her husband Mukeshbhai Bhakta, and two others, formed Jai Jalaram
Lodging Group, L.L.C. for the purposes of owning and operating a Comfort Inn
motel in Alvin, Texas, a forty-unit motel franchised through Choice Hotels
International, Inc.  The Comfort
Inn-Alvin opened in March 2000 and was a completely new facility.  

In February 2001,
Mrs. LeRibeus was staying at Appellant=s
motel with relatives and in town to visit her ailing father.  After spending the day at a hospital with her
father, she returned in the evening and parked her car in the motel parking lot
in a space between two cars, across from the side entrance of the motel in a
well-lit area.  As she got out of  her car, a man coming from the back of the
parking lot near the garbage dumpster, was walking toward her car.  As he walked past her car, Mrs. LeRibeus was
hit with a baseball bat by an accomplice. 
Mrs. LeRibeus was hit several times before she was threatened with a gun
and forced into her car.  One of the men
took the car keys from her and they drove out of the parking lot.  The assailants demanded her jewelry, drove
directly to a bank ATM machine, demanded the pin numbers for her credit and
bank cards and then withdrew substantial sums of money from her accounts.  Mrs. LeRibeus was left in her vehicle after
her assailants were picked up by other persons in another car.  She was found by a passing motorist who took
her to the hospital for emergency treatment. 
At the time of the attack, Mrs. LeRibeus=
assailants, Beerien Crouch and DeCarlos Garrett, were already wanted for a
series of similar armed robberies they had committed in Houston.  Crouch confessed to the crime and implicated
Garrett.  Crouch pled guilty and was
sentenced to two concurrent sentences of forty-five years= imprisonment while Garrett received
stacked sentences of forty-five years and ninety-nine years= imprisonment.








Mrs. LeRibeus and
her husband sued Appellant and Choice Hotels International, Inc., alleging that
the defendants were negligent in failing to provide proper and adequate security
and safety measures, which proximately caused Mrs. LeRibeus= injuries.[1]  Beerien Crouch and DeCarlos Garrett were
later added as defendants to the suit, but are not parties on appeal.  The jury found that Appellant=s negligence proximately caused Mrs.
LeRibeus=
injuries, finding it 24 percent responsible for the occurrence.  The judgment rendered on the jury=s verdict awarded Mrs. LeRibeus
$288,131.49 and Mr. LeRibeus $28,813.14 against Appellant.

We first address Appellant=s contention that there was no evidence
to establish that the particular crime against Mrs. LeRibeus was foreseeable,
thus no duty on the part of Appellant to protect her from the criminal acts of
a third party.  The essential elements of
a negligence claim are:  the existence of
a legal duty; a breach of that duty; and damages proximately caused by that
breach.  D. Houston, Inc. v. Love,
92 S.W.3d 450, 454 (Tex. 2002); Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 477 (Tex. 1995).  In
general, a person has no legal duty to protect another from the criminal acts
of a third person.  See Timberwalk
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998); Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). 
However, one who controls the security and safety of a premises does
have a duty to use ordinary care to protect invitees from criminal acts of
third parties if he knows or has reason to know of an unreasonable and
foreseeable risk of harm to the invitee. 
Timberwalk, 972 S.W.2d at 756. 
Whether a duty exists is a question of law for the court to decide.  Id.








Foreseeability
requires only that the general danger be foreseeable, not the exact sequence of
events that produced the harm.  Id.  When the general danger is the risk of injury
from criminal activity, the evidence must reveal specific previous crimes on or
near the premises in order to establish foreseeability.  Timberwalk, 972 S.W.2d at 756.  A duty exists only when the risk of criminal
conduct is so great that it is both unreasonable and foreseeable.  Id. 
Whether such risk was foreseeable must not be determined in hindsight
but rather in light of what the premises owner knew or should have known before
the criminal act occurred.  Id. at
757.  Factors to be considered in
determining foreseeability of the occurrence of certain criminal conduct
are:  (1) whether any criminal conduct
previously occurred on or near the property; (2) how recently the criminal
conduct occurred; (3) how often criminal conduct occurred; (4) how similar the
conduct was to the conduct on the property; and (5) what publicity was given to
the occurrences to indicate that the landowner knew or should have known about
them.  Id.

Proximity

For a landowner to
foresee criminal conduct on property, there must be evidence that other crimes
have occurred on the property or in its immediate vicinity.  Timberwalk, 972 S.W.2d at 757.  Criminal activity occurring farther from the
owner=s
property bears less relevance because crime rates may be expected to vary
significantly within a large geographic area. 
Id.  Evidence of remote
criminal activity, however,  may indicate
that crime is approaching an owner=s
property, but such evidence must be especially strong and must show that the
risk of criminal conduct on the owner=s
property is not merely increasing but has reached a level as to make crime
likely.  Id.  Thus, for a risk to be foreseeable, there
must also be evidence of criminal activity within the specific area at issue,
either on the landowner=s
property or closely nearby.  Timberwalk,
972 S.W.2d at 757.

Recency/Frequency








Foreseeability
also depends on how recently and how often criminal conduct has occurred in the
past.  Timberwalk, 972 S.W.2d at
757-58.  The occurrence of a significant
number of crimes within a short time period strengthens the claim that the
particular crime at issue was foreseeable. 
Id. at 758.  On the other
hand, the complete absence of previous crimes, or the occurrence of a few
crimes over an extended time period, negates the foreseeability element.  Id.

Similarity

The previous
crimes must be sufficiently similar to the crime in question as to place the
landowner on notice of the specific danger. 
Timberwalk, 972 S.W.2d at 758.  
The prior crimes need not be identical. 
Id.  A string of assaults
and robberies in an apartment complex make the risk of other violent crimes,
like murder and rape, foreseeable.  Id.  On the other hand, a spate of domestic
violence in the complex does not portend third party sexual assaults or robberies.  Id. 


Publicity

The publicity
surrounding the previous crimes helps determine whether a landowner knew or
should have known of a foreseeable danger. 
Timberwalk, 972 S.W.2d at 758. 
Actual notice of past incidents strengthens the claim that future crime
was foreseeable.  Id.  However, unreported criminal activity on the
premises is no evidence of foreseeability. 
Id. at 758-59.  Property
owners bear no duty to regularly inspect criminal records to determine the risk
of crime in the area.  Id. at 759.
 On the other hand, when the occurrence
of criminal activity is widely publicized, a landlord can be expected to have
knowledge of such crimes.  Id.








The Timberwalk
factors--proximity, recency, frequency, similarity, and publicity--must be considered
together in determining whether criminal conduct was foreseeable.  Timberwalk, 972 S.W.2d at 759.  We now review the evidence presented in light
of the Timberwalk factors to determine whether Appellant owed Mrs.
LeRibeus a legal duty to protect her from third-party criminal acts on its
property.  

LeRibeus= expert witness, Dr. David Salmon,
testified that in his crime analysis, he used the calls for service to the
Alvin Police Department occurring in a one-mile radius of the Comfort Inn in
the two years and two months preceding the criminal conduct against Mrs.
LeRibeus.  His statistics showed that
criminal activity in the area had dramatically increased from 1999 to 2000.  The police call reports for 1999 showed that
the following crimes, which Dr. Salmon considered relevant, were reported
within the one-mile radius of the Comfort Inn:

212 thefts;

126 criminal mischief offenses;

71 assaults;

13 sexual assaults;

6 aggravated assaults;

43 burglaries of a motor vehicle;

1 robbery;

23 unauthorized use of a motor
vehicle offenses;

11 terroristic threats;

59 criminal trespass offenses; and

1 weapons offense.

 

For 2000, the call reports showed:

 

288 thefts;

149 criminal mischief offenses;

76 assaults;

9 sexual assaults;

1 aggravated assault;

83 burglaries of a motor vehicle;

9 robberies;

36 unauthorized use of a motor
vehicle offenses;

28 terroristic threats;

64 criminal trespass offenses;

1 weapons offense;

5 gun incidents; and

2 deadly conduct offenses.

 








In the two months preceding the
attack on Mrs. LeRibeus, the call reports showed that in particular, there had
already been calls to the police concerning twenty-nine thefts, sixteen
criminal mischief offenses, thirteen assaults, one sexual assault, seven
burglaries of a motor vehicle, and three robberies.  Dr. Salmon excluded assaults related to
family violence disturbances.  Dr. Salmon
limited his data to the call reports because this information would have been
the only information on criminal activity readily available to Appellant for
nonlitigation purposes prior to the crimes against Mrs. LeRibeus.  Dr. Salmon also explained that he limited his
statistical analysis to the types of offenses that could have been related or
charged for the criminal conduct in the LeRibeus case.  Based on his analysis, it was Dr. Salmon=s opinion that given the dramatic
increase in criminal activity of the type that occurred to Mrs. LeRibeus, the
general danger of this event on Appellant=s
property was foreseeable.  

Houston Police
Department Detective Robert Sherrouse was the lead investigator for a series of
robberies in Houston that involved a comparable method of operation.  He was contacted by the Alvin police
regarding Mrs. LeRibeus=
case, which appeared similar in nature to the robbery cases he was
investigating.  In fact, photographs of
one of Mrs. LeRibeus=
assailants taken from the ATM location in Alvin led to the arrest of one of the
suspects in the cases.  According to
Detective Sherrouse, the criminal conduct that was committed against
Mrs. LeRibeus could fall within the following offenses:  disorderly conduct, criminal mischief,
terroristic threats, unlawful restraint, unauthorized use of a motor vehicle,
theft, assault, aggravated assault, robbery, aggravated robbery, attempted
murder, attempted capital murder, kidnaping, aggravated kidnaping, extortion,
and burglary.  He stated that all of the
crimes were a part of the event that occurred to Mrs. LeRibeus within a short
period of time.








Dr. Merlyn Moore,
Appellant=s expert
witness, relied on incident reports rather than calls for service in his
analysis, because they more accurately reflected the occurrence of actual
crimes at the property and the two motels in close proximity to the Comfort
Inn.  From the time that the Comfort Inn
opened in March 2000, to the time that Mrs. LeRibeus was attacked in February
2001, the following incidents of criminal activity occurred at the Comfort
Inn:  (1) a criminal mischief incident,
involving someone jumping on the hood of a car; (2) theft of property from the
motel rooms of various guests on one particular date in November 2000; and (3)
theft of money from the register, for which Mrs. Bhakta chose not to file a
complaint.[2]

With regard to
similar crimes, Dr. Moore looked for violent crimes on the property or in the
immediate vicinity, which he limited to the neighboring properties, the Best
Western Motel and the Country Hearth.  He
did not include property crimes like theft, burglary of habitation, or burglary
of a motor vehicle in his analysis. 
Further, Dr. Moore also excluded the crimes of criminal mischief,
unauthorized use of a motor vehicle, terroristic threats, criminal trespass,
weapons offense, and assault because he did not consider them violent
crimes.  Dr. Moore determined that no
similar violent crime had occurred at the Comfort Inn since it had opened and
in addition, no violent crimes had occurred at either adjoining property.[3]








Dr. Moore
disagreed with Dr. Salmon=s
use of a one-mile radius in determining the proximity of crime for the Comfort
Inn.  Even accepting Dr. Salmon=s one-mile radius as the parameter, Dr.
Moore found that from 1999 to February 2001, there were only forty calls for
service related to violent crimes. 
Incident reports revealed that in six of the calls, no incident report
was filed.  Twenty-two of the calls were
domestic interpersonal incidents and one was a misdemeanor assault.  Dr. Moore found that only nine were stranger
initiated violent crimes in the one-mile radius.  Dr. Moore determined that this figure showed
the infrequency of violent crime in the extended area around the Comfort
Inn.  Further, the violent crimes he did
identify were dissimilar to the particular crime against Mrs. LeRibeus and did
not suggest in any way that the violent crime against Mrs. LeRibeus was going
to occur.  With respect to publicity,
Dr. Moore did not consider it a factor in this case because the property
owners did not know anything was happening and only calls for service were
available in a non-litigation matter, not the incident reports.  According to Dr. Moore, Alvin is not a high
crime city and there was no crime problem at the Comfort Inn.[4]  Based on his overall analysis, Dr. Moore
opined that the attack on Mrs. LeRibeus was not reasonably foreseeable.

Mrs. Bhakta, a
general manager of the motel, testified that she did not subscribe to the local
newspaper and did not know of any crimes at the neighboring motels.  From March 2000 to February 2001, there were
minor crimes at the Comfort Inn, specifically, someone walking on a car, theft
from a guest=s room,
and theft from the cash register by an employee.  In addition, on cross-examination Detective
Sherrouse testified that he lived in Alvin for seven years, was somewhat
familiar with the crime in the Alvin area, and thought the type of crime
against Mrs. LeRibeus was not the type one would expect to happen in Alvin
very often.  








The evidence shows
that within the two years and two months prior to the attack on
Mrs. LeRibeus, police call reports within a one-mile radius of the Comfort
Inn showed a rise in criminal activity from 1999 to February 2001.  While Dr. Salmon=s
analysis was based on a broad definition of relevant call reports, there was no
evidence that any of the purported crimes involved the degree and severity of
the crime in question.  Further, the
figures generated to show a rise in crime, show only a slight increase, and
thus, such evidence is not strong enough to show that the risk of criminal conduct
on Appellant=s
property had reached a level as to make crime likely.  See Timberwalk, 972 S.W.2d at
757.  

Incident reports
analyzed by Dr. Moore showed that only forty of these calls for service in the
one-mile radius were related to violent crimes, twenty-two of which involved
domestic disturbances.  Evidence of
criminal activity closer to Appellant=s
property holds greater relevance and, in this case, the evidence showed that no
violent crimes had ever occurred at the Comfort Inn and that no violent crimes
had been reported at the neighboring motels in over two years.  Several property crimes, however, had
occurred at the Comfort Inn.  Property
crimes may expose a dangerous condition that could facilitate personal
crimes.  Timberwalk, 972 S.W.2d at
758.  As noted in Timberwalk,
property crimes, such as repeated burglaries at a targeted apartment complex,
may increase the risk of violent personal crimes like sexual assault at the
same location, but in this case there was no evidence that the few property
crimes occurring at the Comfort Inn, at the neighboring motels, or even those
in the surrounding area, were occurring with any notable frequency or were of
the kind that would have facilitated the violent personal crimes committed
against Mrs. LeRibeus on Appellant=s
property. 








With regard to
publicity surrounding previous crimes, there was no evidence that criminal
activity within the one-mile radius of the Comfort Inn, as indicated by either
police call reports or incident reports, was widely publicized in the media or
otherwise known to Appellant.  Rather, it
was undisputed that for Appellant to have knowledge of this criminal activity,
the property owner would have had to contact the Alvin Police Department and
request such information presumably at regular intervals during the preceding
two years.  Property owners bear no duty
to regularly inspect criminal records to determine the risk of crime in the
area.  Timberwalk, 972 S.W.2d at
759.  Further, there was no evidence that
Appellant had actual knowledge of previous crimes at the Comfort Inn,
neighboring motels, or surrounding area that were sufficiently similar to the
criminal conduct in question as to put it on actual notice of the risk of the
future criminal activity on its property.

Applying the Timberwalk
factors, we must ultimately conclude that the risk of the particular criminal
conduct against Mrs. LeRibeus was unforeseeable to Appellant and thus, as a
matter of law, Appellant had no duty to protect her for the criminal acts of
the third parties.  Appellant=s Issue One is sustained.  Because of our disposition of Appellant=s first issue, we need not address its
remaining issues.

We reverse the
trial court=s
judgment and render a take-nothing judgment in favor of Appellant.

 

February
9, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
Choice Hotels International, Inc., the franchisor, was dismissed from the
lawsuit without prejudice on October 2, 2002.





[2]
Dr. Salmon=s crime
analysis showed that call reports showed two motor vehicle thefts, one burglary
of a motor vehicle, one criminal mischief offense (someone jumping on someone
else=s car),
and two thefts at the Comfort Inn property since it had opened.  There were no incident reports filed for the
two motor vehicle theft and burglary calls for service.





[3]
Dr. Moore recalled that one crime had occurred on one of the adjoining
properties or one crime on each of the properties, but none of the crimes were
violent crimes.





[4]
Dr. Moore also stated that according to the Uniform Crime Reports from the
Texas Department of Public Safety, the crime rate for Alvin is about 3.2 per
1,000 persons.  The crime rate for
Houston was about 11 per 1,000, with the national average at between 5 and 6
per 1,000.