**Opinion issued January 7, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00262-CV

_____

**MELISSA MACHELLE CLARK AND STETSON BENNINGFIELD,**
**Appellants**

**V.**

**EOG RESOURCES, INC., Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-66372**

---

## MEMORANDUM OPINION

Appellants Melissa Machelle Clark and Stetson Benningfield appeal the trial court's granting of summary judgment in favor of appellee EOG Resources, Inc. We affirm.

# BACKGROUND

The underlying facts here are largely undisputed. Appellee EOG Resources, Inc. is an energy exploration company. It has a Master Service Contract with Vaquero, under which Vaquero's employees perform jobs at EOG's premises. EOG is Vaquero's main client, and their agreement provides that Vaquero is an independent contractor, which is at all times in control of its employees' work.[1]

Jack Imboden is a compression foreman with EOG, and he is a supervisor to lead mechanic Danny Graham. Imboden oversees a group of mechanics at EOG facilities that consist of about 95 percent contractors (from Vaquero and various other companies) and about five percent EOG employees. Imboden and Graham regularly review resumes, and Graham interviews people, to refer to contractor companies like Vaquero for consideration to hire to do work as contractor

---

[1] Specifically, it provides:

> In the performance of any work by Contractor for Company, Contractor conclusively shall be deemed an independent contractor, with the authority and right to direct and control all of the details of the work, Company being interested only in the result obtained. However, all work contemplated shall meet the approval of Company and shall be subject to the general right of inspection. Company shall have no right or authority to supervise or give instructions to the employees, agents or representatives of Contractor, but such employees, agents or representatives at all times shall be under the direct and sole supervision and control of Contractor. Any suggestions or directions which may be given by Company or its employees shall be given only to the superintendent or to the other person in charge of Contractor's crew, it is the understanding and intention of the parties hereto that no relationship of master and servant or principal and agent shall exist between Company and the employees, agents or representatives of Contractor.

employees on EOG's premises. Vaquero hired employees referred by EOG more than fifty percent of the time.

This dispute involves Vaquero's hiring of Robbie Lynn Clark, who is now deceased. Clark was Imboden's half-brother, and Clark was hired to work for Vaquero at EOG's site after he was referred to Vaquero by Imboden. Before he applied with Vaquero, Clark had a long history of DWI convictions. He was charged, convicted, and sentence to 180 days' confinement after an arrest in Comanche County, Texas on December 6, 1991 for DWI. He was arrested again on December 5, 1994 and charged with a third-degree felony for a third offense of DWI, pleaded guilty, and was sentenced to eight years' confinement. He was paroled from that confinement on June 12, 1998, and was to remain under community supervision until December 5, 2002.

On June 9, 2001, Clark was again arrested and charged with a third-degree felony DWI. Clark entered a plea bargain and was sentenced to ten years' confinement. He was again paroled on May 23, 2007, with a special condition that he not operate a motor vehicle without prior approval of his parole officer.

On June 7, 2007, Clark renewed his driver's license and then applied for a job with Vaquero. Vaquero's insurance agent requested Clark's driving record (generating a report that is labeled "for insurance purposes only"), which showed only three years of history (and, hence, no DWI convictions) and reflected only

3

that Clark's license had been expired since 2005. Clark provided proof to Vaquero that his license was renewed with no restrictions. Vaquero hired Clark without verifying his references or job history listed on his application, which did not reflect any gaps in employment. Clark was assigned a company truck.

Unbeknownst to Vaquero, Clark was again arrested for DWI on December 15, 2007, and his license was suspended. Clark continued to drive for Vaquero without a license. On October 9, 2008, Clark was driving his Vaquero company truck with another Vaquero employee as a passenger leaving a job site to go to lunch. Clark ran the truck off the road and was killed when the truck rolled and ejected him from the vehicle. An autopsy revealed his blood alcohol concentration to be 0.344.

## A. Plaintiffs' claims

The plaintiffs here are Melissa Machelle Clark (as surviving spouse and administrator of Clark's estate), and Stetson Clark a/k/a Stetson Benningfield (Clark's son). They sued both EOG and Vaquero, although this appeal involves only their claims against EOG.

Plaintiffs assert that "EOG and Vaquero, acting with conscious indifference from the well being of [Clark], ignored their own internal policies," which prohibited the use of alcohol on the job and required disclosure to Vaquero if a

person recommended for a job is related to the person making the recommendation.

Plaintiffs' petition contains the following claims against EOG:

(1) "negligence, negligent hiring of a contractor including the negligent failure to investigate, screen, and supervise, negligent retention of a contractor, negligent hiring of an employee, negligent failure to investigate, screen, and supervise, negligent retention of an employee, negligent failure to disclose, negligent failure to qualify and gross negligence on each count above"

(2) "gross negligence," and

(3) "wrongful death"

## B. Summary Judgment proceedings

EOG filed a no-evidence and traditional motion for summary judgment. Plaintiffs filed special exceptions challenging EOG's no evidence summary judgment motion, requesting that EOG be ordered to "replead with the necessary specificity so that Plaintiff has notice as to which elements of which causes of action EOG is referring to." Plaintiffs also filed objections to some of EOG's summary-judgment evidence and a response to EOG's motion.

The trial court granted EOG's motion.

## ISSUES ON APPEAL

On appeal, the plaintiffs argue (1) the trial court abused its discretion in overruling their special exceptions to EOG's motion for summary judgment, and (2) the trial court erred in granting summary judgment.

5

## SPECIAL EXCEPTIONS

Plaintiffs contend that, in its motion for summary judgment, EOG identified the elements of Plaintiffs' claims as "duty, breach, and causation but fail to specify which of the three elements are lacking." Plaintiffs assert that EOG then "further mudd[ied] the water" by spending several pages summarizing the law governing duty, and then listing facts that allegedly demonstrate that EOG lacks a duty in this case, and then concluding that Plaintiffs are "unable to establish any of the essential elements of a cause of action." According to Plaintiffs, EOG's "motion lacked specificity and was conclusory rendering the motion unclear and ambiguous." Thus, plaintiffs argue, they "should not be required to argue the elements of breach and proximate cause as nothing in EOG's motion specifically points to either of these elements." They request that we hold the trial court "abused its discretion in this regard and remand this cause to the trial court and order EOG to plead with the required specificity."

EOG responds that it sufficiently identified the elements it challenged in a section of its hybrid motion entitled, "Basis for No Evidence Summary Judgment." That portion stated that Plaintiffs are "unable to establish one or more of the essential elements of [their] claims against EOG" and identified those elements as "a duty, a breach and that the breach was a proximate cause of the occurrence or injury." EOG argues that courts have found similar statements to be sufficiently

6

specific and, in any event, Plaintiffs have not alleged that the court's overruling their special exceptions impacted their ability to respond caused the trial court to render an improper judgment.

Rule 166a(i) requires that a no-evidence motion for summary judgment identify elements of which there is no evidence with specificity.

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *The motion must state the elements as to which there is no evidence.* The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(i) (emphasis added). The supreme court has explained the "underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for purpose of summary judgment.'" *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). The requirement is akin to "fair notice" pleading requirements. *See, e.g.*, *Gary Patterson & Assocs. v. Holub*, 264 S.W.3d 180, 200 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding specifically identifying and challenging each element of claim is sufficient).

Here, EOG's motion listed each negligence theory from Plaintiffs' petition, and states that the essential elements of each claim are "duty, breach and that the breach was a proximate cause of the occurrence or injury." The motion contains

7

(1) a lengthy analysis of Texas law regarding the limits of the duty owned by employers of independent contractors, (2) a list of the type of evidence Plaintiffs allegedly lack, and (3) a statement that Plaintiffs are "unable to establish any of the essential elements of a cause of action against EOG based on negligence."

The trial court correctly concluded that EOG's motion for summary judgment's adequately identified the elements of Plaintiffs' claims for which EOG claims that there is no evidentiary support, i.e., duty, breach, and proximate cause. In any event, Plaintiffs do not challenge that EOG adequately addressed the element of duty, which—as discussed below—is the element that we find to be dispositive in this appeal.

We overrule Plaintiffs' first issue.

## SUMMARY JUDGMENT

### A. Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). When a party has filed both a traditional and no-evidence summary judgment motion and the order does not specify which motion was granted, we typically first review the propriety of the

8

summary judgment under the no-evidence standard. *See* TEX. R. CIV. P. 166a(i); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the no-evidence summary judgment was properly granted, we need not reach arguments under the traditional motion for summary judgment. *Ford Motor Co.*, 135 S.W.3d at 600.

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim. TEX. R. CIV. P. 166a(i). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *Id.*

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence*, 164 S.W.3d at 661. A defendant who moves for traditional summary judgment on the plaintiff's claim must conclusively disprove at least one element of the plaintiff's cause of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004).

**B. Duty**

The parties agree that an essential element of each of Plaintiffs' negligence-based claims is duty. The existence of a duty is a question of law, although it can turn on the resolution of disputed facts or inferences. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005)).

The parties have presented us with extensive briefing about independent-contractor relationships and the circumstances under which a contracting entity (here, EOG) may owe a duty to an independent contractor's employee (here, Clark as an employee of Vaquero) or to a third party injured by an independent contractor's conduct. The parties have also briefed issues related to the applicability of the "unlawful-act doctrine," including whether it has been superseded in whole or in part by Chapter 93 of the Texas Civil Practice and Remedies Code. We conclude, however, that we need not resolve these issues because this case turns on the narrower issue of what duty, if any, could be owed to Clark under these facts.

"It is well settled that the threshold inquiry in a negligence claim is whether a duty is owed to the plaintiff by the defendant." *Edwards v. Silva*, 32 S.W.3d 713, 715 (Tex. App.—San Antonio 2000, pet. denied). Essentially, by challenging the independent-contractor status, Plaintiffs seek to place EOG (the company that

hired Vaquero, the independent contractor) in the shoes of Vaquero (Clark's employer) by arguing that EOG exerted sufficient control over Clark's hiring, retention, and/or entrustment to impute an employment-like relationship, with the accompanying duties and rights, between EOG and Clark. For purposes of our analysis, we will assume without deciding that such control existed. The issue then becomes: "Does an employer owe a duty to prevent the employee from injuring himself through his own intoxicated driving of a company vehicle during a lunch break?" Our review of the relevant Texas caselaw leads us to conclude that no such duty exists on the facts presented here.

In *Otis Engineering Corporation v. Clark*, the supreme court first addressed whether an employer could be liable to *third parties* killed in an automobile collision by an intoxicated employee on his way home from work. 668 S.W.2d 307, 308 (Tex. 1984). The employee was known to drink on the job and, on the night of the accident, his supervisor escorted him out of his work area and sent him home in middle of his shift because he was so intoxicated that he had been seen "weaving and bobbing on his stool and about to fall into his machine." *Id*. The supreme court held that a duty to third parties could exist on these facts, and articulated it as follows:

> [W]hen, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonable prudent employer under the same or similar

11

circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

*Id*. at 311. The court remanded for the factfinder to resolve whether the employer had acted reasonably.

In contrast, courts have declined to extend *Otis* to create a duty owed to third parties injured by intoxicated employees absent evidence of "negligent exercise of control over the employee." *Catlin v. Gen. Motors Corp.*, 936 S.W.2d 447, 451 (Tex. App.—Houston [14th Dist.] 1996, no writ) ("Because there is no summary judgment evidence indicating that [the employer] or its employees knew that [deceased] was intoxicated and exerted any control over him, *Otis'* narrow duty imposed on employers to third persons does not apply."); *see also id*. at 451 ("In order for a duty to third persons to arise, an employer must perform some affirmative act of control over an 'incapacitated employee.'").

Several courts, including this one, have likewise declined to extent *Otis* to create a duty owed to an employee or contractor injured by his or her own intoxication. For example, in *Verdeur v. King Hospitality Corp.*, the plaintiff with a known history of drinking showed up for work intoxicated and was later sent home by her manager because of her condition. 872 S.W.2d 300, 301 (Tex. App.—Fort Worth 1994, writ denied). She was killed in an automobile accident on the way home, and her family brought a wrongful death suit against her employer. *Id*. The Fort Worth Court of Appeals rejected the plaintiffs' argument

12

that *Otis* created a duty in this situation, explaining "*Otis* only creates a duty owed by an employer to *innocent third parties* who are injured by the acts of an intoxicated employee. It does not create a duty which requires an employer to protect an intoxicated employee *from injuring herself.*"  *Id*. at 303 (second emphasis added).

In *Edwards*, the San Antonio Court of Appeals likewise declined to extend *Otis* in a situation where the plaintiff's employer was aware of his intoxication, but did not exert actual control over the plaintiff or his drinking.  32 S.W.3d at 717.  In that case, the plaintiff went out drinking with his boss after work at his boss's invitation.  *Id*. at 715.  Afterwards, after he became intoxicated, his boss dropped him back off at his car and he was injured in an accident while driving home.  *Id*. at 714.  Noting the general rule that "a person is under no duty to control the conduct of another," the *Edwards* court distinguished *Otis*, explaining that a "duty attaches in the context of the employer-employee relationship only with the employer performs *some affirmative act of control* over an incapacitated employee."  *Id*. at 715–16; *see also Swanson v. Steak & Ale of Tex., Inc.*, No. 01-97-01019-CV, 1998 WL 350586, at *5–6 (Tex. App.—Houston [1st Dist.] June 25, 1998, no pet.) (not designated for publication) (declining to "extend the holding in *Otis* to the intoxicated employee" and noting that, in any event, supervisor drinking

with employee "did not exercise sufficient control to warrant the imposition of such a duty.")

In *D. Houston, Inc. v. Love*, however, the supreme court extended *Otis* to recognize a duty owed to intoxicated employees and contractors to prevent them from injuring themselves while driving from work if drinking alcohol is required by the employer. 92 S.W.3d 450, 452 (Tex. 2002). The plaintiff in *Love* was a dancer at Treasures, where drinking on the job was heavily encouraged, if not required. *Id*. at 456. She was injured in an automobile accident after leaving work intoxicated one evening. *Id*. at 452. The court recognized a narrow duty arose from Treasures's control over the plaintiff's intoxication:

> We hold that when an employer exercises some control over its independent contractor's decision to consume alcoholic beverages to the point of intoxication, such that alcohol consumption is required, the employer must take reasonable steps to prevent foreseeable injury to the independent contractor caused by drunk driving.

*Id*. at 457.

Here, Plaintiffs summary-judgment response alleges EOG exerted control in the following respects:

- "EOG exercised control over Vaquero's hiring process." (i.e., Vaquero hired Clark on Iboden's recommendation)

- "EOG supervised the actions of Vaquero employees." (i.e., EOG supervises Vaquero employees at EOG's job site)

- "EOG retained and exercised control over Vaquero vehicles." (i.e., Vaquero assigns trucks to its employees for use in doing work for EOG

14

at EOG's direction, and Vaquero charges EOG $.85 a mile for Vaquero employees to do work for EOG in Vaquero's vehicles).

- "EOG retained the right to ask that any Vaquero employee be replaced from the EOG jobsite."

Under *Otis* and its progeny, this alleged control falls short of what is required to demonstrate that EOG owed a duty to Clark to prevent Clark from injuring himself driving to lunch while intoxicated. There is no evidence that EOG knowingly assumed control over an intoxicated Clark (as in *Otis*) or that EOG encouraged or required Clark to consume alcohol at work (as in *Love*). Because Plaintiffs cannot establish a duty exists, the trial court's granting summary judgment was proper.

We overrule Plaintiffs' second issue.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.