**Rhonda HOGAN, Appellant,**

v.

**J. HIGGINS TRUCKING, INC., Higgins Trucking, and Johnny Higgins, Individually and d/b/a Higgins Trucking, Appellees.**

No. 05–05–00617–CV.

Court of Appeals of Texas, Dallas.

July 26, 2006.

Warren Hays, Garland, Joe Smith, Foreman Boudreaux Smith & Johnson, Dallas, for Appellant.

Bryan Powell Reese, Dallas, for Appellees.

Before Justices WRIGHT, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice WRIGHT.

Rhonda Hogan appeals the traditional and no-evidence summary judgments granted in favor of J. Higgins Trucking, Inc., Higgins Trucking, and Johnny Higgins, Individually and d/b/a Higgins Trucking (collectively "Higgins"). In three issues, Hogan argues the trial court erred by granting summary judgment because (1) there is evidence that Anthony Jackson was operating under the Higgins' Texas Department of Transportation certificate at the time of the collision and is vicariously liable; (2) she presented evidence that Higgins controlled or had a right to control Jackson's driving resulting in liability; and (3) the statutory employment doctrine under the Federal Motor Carrier Safety Regulations does not bar her claims. Because she has raised a genuine issue of material fact regarding control resulting in liability and Higgins' duty to her, we reverse the trial court's traditional and no-evidence summary judgment and remand this case to the trial court.

### Factual and Procedural Background

In January 2000, Higgins signed a subcontracting agreement with Thurman Transportation, which allowed Higgins to service the subcontract with trucks and drivers from outside the Higgins company. Higgins found several additional trucks and drivers to handle the Thurman business through MTR Trucking. Although Higgins and MTR did not enter into a leasing agreement, their relationship began in January 2001. Anthony Jackson was hired as a driver to service the Thurman subcontract.

This case involves the collision of two gravel trucks and the resulting injuries to appellant Rhonda Hogan. The truck, with the MTR logo, was driven by Jackson. Hogan drove the other truck.

During this time, Jackson had been hauling gravel exclusively for Higgins for so long that he could not remember the last time he hauled for anyone else. When Jackson received orders about a certain job, he sometimes received a dispatch directly from Higgins or indirectly through MTR. Generally, when Higgins dispatched him directly, he would tell him what to pick up, where to pick it up, whether to wash it, and then where to take it. Although he sometimes drove a truck with the MTR logo, when he picked up a Higgins' load he identified himself as a Higgins' driver.

On August 27, 2001, Hogan was waiting in a line of gravel trucks to pick up a load at Hanson Aggregate's Perch Hill Quarry. Jackson, who had been dispatched by Higgins but was driving a truck with the MTR logo, exited his truck and left it unattended to assist a fellow driver with a broken CB radio. Although he set the parking brake, it malfunctioned causing the truck to roll forward, rear-end Hogan's truck, and injure her neck. Following the accident, Jackson went to Higgins' office where Mr. Higgins, Jr. requested him to sign an "Agreement to Release Driving Information." This document described Jackson as "driver" and Higgins as "employer."

Hogan later filed suit against Higgins, Jackson, and MTR alleging negligence, vicarious liability, strict liability, negligence per se, and negligent entrustment. Higgins filed a traditional and no-evidence motion for summary judgment arguing that under the "statutory employment" doctrine Higgins was immunized from all liability, and there was no evidence to support Hogan's negligence, negligent entrustment, and negligence per se claims. The trial court granted the motion as to

statutory employment, negligent entrustment, and negligence per se, but denied it as to negligence.

After Hogan added a breach of contract claim, Higgins filed a second motion for summary judgment on the breach of contract claim and urged the court to reconsider its ruling on the negligence cause of action. The court then granted the second motion for summary judgment. Hogan proceeded to a bench trial with MTR and Jackson. The trial court entered judgment against them in the amount of $345,000.

On appeal, Hogan urges three specific grounds for reversal of the summary judgment contending she raised fact issues on (1) vicarious liability, (2) right to control, and (3) inapplicability of the statutory employment doctrine. Each of these contentions relate to her negligence claim. Because she has not raised and argued any issues regarding her negligence per se, breach of contract, or negligent entrustment claims, they are not within the scope of this appeal. *See* TEX.R.APP. P. 38.1(e).

## Standard of Review

The standard for reviewing a traditional summary judgment under Texas Rule of Civil Procedure 166a(c) is well established. TEX.R. CIV. P. 166(c); *Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994). As the reviewing court, we must (1) place the burden of showing that there is no genuine issue of material fact on the movant; (2) take all evidence favorable to the nonmovant as true; and (3) indulge every reasonable inference and resolve all doubts in favor of the nonmoving party. *Caldwell v. Curioni,* 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied).

The same legal sufficiency standard of review that is applied when reviewing a directed verdict is also applied when reviewing a no-evidence summary judgment. *Gen. Mills Rests., Inc. v. Texas Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.* at 833. A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

When, as here, the trial court does not specify the basis for its summary judgment ruling, the appellant must show that each independent ground alleged is insufficient to support the judgment. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Caldwell,* 125 S.W.3d at 789. Both the no-evidence and traditional grounds for summary judgment are evaluated to determine whether the trial court was correct under any theory. *Alaniz v. Hoyt,* 105 S.W.3d 330, 334 (Tex. App.-Corpus Christi 2003, no pet.). We must affirm the summary judgment if any of the movant's theories, which supports the summary judgment, has merit. *Star–Telegram,* 915 S.W.2d at 473.

## Evidentiary Considerations

We begin by determining what summary judgment evidence was before the trial court at the time it ruled on appellant's negligence claim. Higgins contends that we may not consider Jackson's Affidavit, attached to Plaintiff's Response to Higgins' Second Motion for Summary Judgment, because the affidavit directly contradicts Jackson's prior deposition testimony and, therefore, is nothing more than a "sham

affidavit" attempting to create a fact issue.[1]

■ Higgins objected to the affidavit in their Reply to Plaintiff's Response to Defendants' Second Motion for Summary Judgment. However, the record contains no evidence that the trial court expressly sustained their objection to the affidavit. The Texas Rules of Appellate Procedure permit a trial court's ruling to be either express or implied. TEX.R.APP. P. 33.1(a)(2)(A). A ruling is implicit if it is unexpressed, but capable of being understood from something else. *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 316 (Tex.App.-San Antonio 2000, no pet.). However, for there to be an implicit ruling, there must be some indication that the trial court ruled on the objections in the record or in the summary judgment itself, other than the mere granting of the summary judgment. *Broadnax v. Kroger Texas, L.P.,* 05–04–01306–CV, 2005 WL 2031783, *1–2 (Tex.App.-Dallas 2005, no pet.); *SSP Partners v. Gladstrong Inv. (USA) Corp.,* 169 S.W.3d 27, 34 (Tex.App.-Corpus Christi 2005, pet. filed).

There is a split of authority regarding whether, pursuant to Texas Rule of Appellate Procedure 33.1(a)(2)(A), an objection to summary judgment evidence can be preserved by an implicit ruling without a written, signed order. *See Stewart v. Sanmina Texas L.P.,* 156 S.W.3d 198, 206 (Tex.App.-Dallas 2005, no pet.). However, this Court has determined the "better practice is for the trial court to disclose, in writing, its ruling on all evidence before the time it enters the order granting or denying summary judgment." *Broadnax,* 2005 WL 2031783, at *1–2; *Stewart,* 156 S.W.3d at 206. On this record, we decline to conclude that the trial court implicitly ruled on Higgins' objection regarding the "sham" affidavit. Therefore, we must now determine whether they properly preserved the objection on appeal.

■ For preservation purposes, an appellate court treats a party's objections to defects in "form" and "substance" of a document differently. *Brown v. Brown,* 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied). Defects in form of an affidavit must be objected to, and the opposing party must have the opportunity to amend. *Id.* The failure to obtain a ruling on an objection to a defect in form waives the objection. *Id.* Defects in substance of the affidavit, however, are not waived by a failure to obtain a ruling from the trial court and may be raised for the first time on appeal. *Stewart,* 156 S.W.3d at 207.

■ Higgins' general objection that Jackson's affidavit is a sham affidavit because it contradicts his earlier deposition testimony is an objection complaining of a defect in form of his affidavit. *Broadnax,* 2005 WL 2031783, at *4; *Choctaw Prop., L.L.C. v. Aledo I.S.D.,* 127 S.W.3d 235, 241 (Tex.App.-Waco 2003, no pet.) (holding that objection of an interested witness that is not clear, positive, direct, or *free from contradiction* is defect in form complaint). Therefore, because it is a defect in form and Higgins failed to obtain a ruling on the objection, their arguments are not properly preserved for appellate review. Accordingly, we may consider Jackson's affidavit in our review of the merits of this appeal.

### Negligence

■ The trial court originally denied Higgins' motion for summary judgment on Hogan's negligence claims; however, in

1. Higgins argues in their brief that they properly objected to the affidavit as being conclusory; however, in their Reply to Plaintiff's Response to Defendants' Second Motion for Summary Judgment they only objected to conflicting prior testimony rendering the affidavit improper summary judgment evidence. Thus, we consider only that objection.

their second motion for summary judgment, they re-urged their statutory employment doctrine arguments, and the trial court granted the motion. On appeal, Hogan argues that even if MTR is Jackson's statutory employer, Higgins can still be vicariously liable for Jackson's negligence and directly liable for their own negligence under applicable state law principles. Higgins, however, contends that the Federal Motor Carrier Safety Regulations preempt any application of common law. As discussed below, because we hold that Higgins' possible negligence is not preempted by federal law, we do not address either parties' arguments regarding statutory employment.

Under the authority of title 49 of the United States Code section 14102, the Interstate Commerce Commission regulates leases of equipment used in interstate commerce. 49 U.S.C. § 14102. During the first half of the century, interstate motor carriers attempted to immunize themselves from liability for negligent drivers by leasing trucks and classifying drivers who operated the trucks as independent contractors. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 37 (Tex.App.-Fort Worth 2002, no pet.); *White v. Excalibur Ins. Co.*, 599 F.2d 50, 52 (5th Cir. 1979). In 1956, Congress amended the Interstate Common Carrier Act to require interstate motor carriers to assume full direction and control of the vehicles that they leased "as if they were the owners of the vehicle." *Morris*, 78 S.W.3d at 38.

The purpose of the amendments was to ensure that interstate motor carriers would be fully responsible for the maintenance and operation of the leased equipment and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred, and providing financially responsible defendants. *Id.*

The Interstate Commerce Commission later issued regulations that required a certificated interstate carrier who leases equipment to enter into a written lease with the equipment owner providing that the carrier-lessee shall have exclusive possession, control, and use of the equipment, and shall assume complete responsibility for the operation of the equipment for the duration of the lease. *See* 49 C.F.R. §§ 376.11–.12 (2005). These regulations are known as the Federal Motor Carrier Safety Regulations.

Here, it is undisputed that no lease agreement exists between Higgins and MTR; however, even if the parties had entered into a lease, case law has not interpreted the language of title 49, section 376.12(c) of the Code of Federal Regulations to preempt common law liability. In *Simmons v. King*, the Fifth Circuit held that although one ICC carrier was the statutory employer as a matter of law for the driver of the truck involved in a collision, this did not prevent possible liability under common law standards of control for another ICC carrier. *Simmons v. King*, 478 F.2d 857, 867 (5th Cir.1973) (noting that the non-statutory employer may have a practical control over the driver that would not allow it to obtain an automatic insulation from liability from the mere terms of a lease between two parties); *see also Hiltgen v. Sumrall*, 47 F.3d 695, 704 (5th Cir.1995) (holding that legal responsibility of the lessee mandated by the federal regulations did not preclude the lessor's liability under common law standards of control).

Although these cases involve leases between two parties under title 49, section 376.12 of the Code of Federal Regulations, by holding that the lessor could still be responsible *despite* the lease, the courts essentially held that the presence of a lease was immaterial. *Hiltgen*, 47 F.3d at

705 (holding that an employer can be subject to vicarious liability based on a right or power to control an employee's actions despite the intervention of a written equipment lease). This is further supported by the Third Circuit in *Carolina Casualty Insurance Co. v. Insurance Co. of North America*, 595 F.2d 128, 146 (3d Cir.1979):

> Whatever preemptive effect the ICC regulations may have in that limited field cannot form a basis for arguing that federal law also displaces state law doctrines governing master-servant relationships, respondeat superior, contribution among tortfeasors, or even ordinary negligence. [citations omitted] Indeed, so massive a disruption of the tissue of state law would be extraordinary in the American legal framework.

*Id.* Further, as noted above, one of the purposes of amending the Interstate Common Carrier Act to include specific lease requirements was to prevent the type of confusion we have here as to financial responsibility. Simply because Higgins and MTR failed to enter into a lease agreement, thereby creating this confusion, Higgins should not be allowed to hide behind the protection of the federal regulations and insulate themselves from liability if they had practical control over Jackson at the time of the collision. As such, Higgins does not escape Hogan's negligence claims because of preemption. Therefore, as the court did in *Hiltgen*, we must consider the relevant facts and determine if a genuine issue of material fact exists regarding Higgins' control of Jackson. *Hiltgen*, 47 F.3d at 704.

To succeed on her negligence cause of action, Hogan must establish a breach of a duty causing harm. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 451 (Tex.2002). The non-existence of a duty would end the inquiry into whether liability can be imposed at all. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998). However, liability for Jackson's fault in the accident may be imputed to Higgins because of the relationship between them. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002). The most important factor we consider is whether Higgins had a right to control Jackson's activities allowing vicarious liability to be imposed. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). "The most frequently proffered justification for imposing such liability is that the principal or employer has the right to control the means and methods of the agent's or employee's work." *Id.; see also Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex.1996) (noting that right to control remains the "supreme test" for whether vicarious liability will be imposed). This includes specific control over the injury-causing activity, which here, is Jackson's failure to check the brake system before departure, driving with defective brakes, and leaving the truck running and unattended. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 199 (Tex.1995).

Higgins repeatedly argues that it is undisputed that they were not Jackson's employer, but rather MTR exercised complete control over his actions. After reviewing the summary judgment record, we cannot agree.

As noted above, we may consider Jackson's affidavit attached to Hogan's Response to Defendants' Second Motion for Summary Judgment, as well as other evidence favorable to the nonmovant. Jackson stated that when he was picking up or delivering a load for Higgins, as he was on August 27, 2001, Higgins had the right to control his truck driving activities and the details of his work if they chose to do so. He further stated it has "always been this way," and Higgins had the right to order him to do things like conduct a pre-trip truck inspection, test the parking brake,

direct him to take a particular route, and cancel or add loads to his daily work schedule. "One way to describe my relationship with Higgins Trucking is this. When I was assigned to pick up and deliver a Higgins load, Higgins Trucking was my boss." He made similar statements in his deposition. He also stated in his affidavit that he was instructed to meet with Higgins the day after the accident. During this meeting, he signed an "Agreement to Release Driving Information" in which he was described as "driver" and Higgins as "employer." Jackson also stated that he had been hauling gravel for Higgins for so long that he could not remember the last time he hauled for anyone else.

These facts are similar to those found in *Hiltgen*. In that case, the driver testified that he considered Abston his boss, after the accident the driver contacted Abston to report it, and the driver's activities were in furtherance of Abston's business. *Hiltgen*, 47 F.3d at 705. The court determined a genuine issue of material fact existed regarding the carrier's control over a driver, despite another carrier being the statutory employer.

Here, the evidence shows that Higgins directed the details of the loads and pick ups and was Jackson's "boss." Jackson's affidavit specifically stated that when he was driving a Higgins' load, they had the right to control his trucking activities and make certain orders, such as conducting a pre-trip inspection, testing the parking brake, and directing his route.

■ Therefore, taking all evidence favorable to Hogan as true and indulging every reasonable inference in her favor, we conclude more than a scintilla of evidence exists to create a genuine issue of material fact regarding Higgins' control of Jackson. *See Shaw*, 73 S.W.3d at 478 (noting that conflicts in deposition and affidavit presented a fact issue). As such, the trial court improperly granted summary judgment on Hogan's negligence claims.[2]

In reaching this conclusion, we necessarily conclude Higgins's reliance on *Ely v. General Motors Corp.* is misplaced. *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 778 (Tex.App.-Texarkana 1996, writ denied). In *Ely*, General Motors offered summary judgment evidence that it had no control over the driver conducting tests under a warranty, which resulted in a car wreck killing a man. *Id.* It did not hire the driver, compensate him, direct the details of the warranty work, or have actual control over the test drive. *Id.* The court noted that "Ely presented no summary judgment evidence ... that General Motors had the right to control Durham during the act resulting in the wrongful death action, namely the test drive." *Id.* Unlike *Ely*, Hogan presented evidence that Higgins had the right to control Jackson's trucking activities during the collision that resulted in Hogan's injuries and direct the details of his activities. Such evidence es-

2. Higgins briefly argued that there is no genuine issue of material fact regarding causation; however, the argument focuses on a lack of control. As noted above, there is a genuine issue of material fact regarding Higgins' control of Jackson resulting in a duty. Further, there is evidence that Higgins did not check the qualifications of Jackson to drive a commercial truck until after the accident. His affidavit states that he did not provide his driver's license information or social security card to Higgins until after the collision.

Likewise, even if Jackson had provided this information prior to the collision, Higgins admitted in his deposition that the only independent investigation into a driver's qualifications was to look at a driver's license, social security card, and medical examiner's certificate. This is more than a scintilla of evidence that Higgins' failure to inquire into Jackson's competency was a cause of the collision. As such, the trial court erred in granting summary judgment.

tablishes that Jackson was not free to do the work according to his own discretion. Thus, we sustain Hogan's second issue.

Because we conclude that a fact issue exists regarding Hogan's negligence claim under the theory of control and whether Higgins had a duty to Hogan, we need not address Hogan's third issue regarding whether Higgins could be vicariously liable for any negligence by Jackson while operating a motor vehicle under Higgins' Texas Department of Transportation certificate. *See, e.g., Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 279 (Tex.App.-Dallas 2003, no pet.) (holding that because a fact issue existed on the parties' intent, it need not address remaining grounds creating possible fact issues). As such, we reverse the trial court's judgment and remand for further proceedings.