NUMBER 13-10-00135-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS CHRISTI -
EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



VERA SULLIVAN AND RAY SULLIVAN,                                
Appellants,

 

v.

 

ARANSAS COUNTY NAVIGATION DISTRICT,                         
Appellee,

 

 



On appeal from the 156th District
Court

of Aransas County, Texas.

 

 



MEMORANDUM OPINION

 

Before Chief Justice Valdez and
Justices Rodriguez and Benavides

Memorandum Opinion by Chief Justice
Valdez

 

This is an
appeal from a summary judgment rendered in favor of appellee, the Aransas
County Navigation District (the “District”).  Appellants, Vera Sullivan and Ray
Sullivan, filed a suit for injuries allegedly sustained when Vera tripped and
fell as she approached the entrance to a restroom owned and operated by the
District.  By a single issue, the Sullivans contend that the trial court erred
by granting summary judgment on the basis of their alleged failure to give
proper notice under section 101.101 of the Texas Civil Practice and Remedies
Code because the District had actual notice of the incident.  See Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (Vernon 2005).  We reverse and remand. 

I.
Background

On January
27, 2009, the Sullivans filed suit against the District alleging that on or
about January 30, 2007, Vera tripped and injured herself while entering a
restroom owned and operated by the District.  The Sullivans’ original and
subsequent amended petitions asserted that Vera “tripped as a result of a
dangerous condition caused by the uneven sidewalk, the deterioration of repairs
of the uneven sidewalk, and the failure of the [District] to warn of the
dangerous condition.”  The District answered by generally denying the
allegations, pleading “all the defenses and limitations of Chapter 101 of the
Civil Practice & Remedies Code, the Texas Tort Claims Act and all the
defenses of Chapter 75 of the Civil Practice and Remedies Code,” and asserting
that the trial court lacked subject-matter jurisdiction because the Sullivans
failed to provide the District with notice of their claim within six months of
the alleged incident.

The District
filed a combined no-evidence and traditional motion for summary judgment based
“on the ground that neither [Vera nor Ray Sullivan] provided timely notice of
his or her claim to the District as required by the Tort Claims Act . . . .”[1]  See id. § 101.101(a) (providing that “[a] governmental unit is
entitled to receive notice of a claim against it . . . not later than six
months after the day that the incident giving rise to the claim occurred”).  The
District attached excerpts of the depositions of Vera and Ray to the motion for
summary judgment.  In her deposition, Vera stated that she fell as she
approached the restroom and hit her head on a wall when she fell.[2]  After falling,
Vera sat up and noticed “a lot of broken-up concrete” in the area where she had
lost her balance.  Vera testified that Ray approached her after she fell and
that “a gentleman” also approached.  Vera continued:

There was a gentleman there
that wanted to—I—I heard him ask Ray if he could call an ambulance. . . .   And
he called an ambulance, and then after I had been sitting there for a short
while there was a man that came around the corner of the building, and he
started asking Ray a bunch of questions.  And he may have been, yes, someone
from the [District] because he had cowboy boots on and a cowboy hat and—he just
looked like maybe that’s—you know, that it was—I assumed it was the county.  I
didn’t know it was the [District]. . . .  I thought it was probably county
[sic].

 

Ray also
testified that he believed that he spoke with someone who worked for the
District at the time of the accident.  At his deposition on June 30, 2009, Ray
stated:

            [A]nd the ambulance had come, and there
were a couple of fellows standing there just watching, I guess.  And the—the
man [Vera] described with the kind of western outfit on . . . he just kept
asking kind of pertinent questions and—or questions you don’t think you’d
normally ask a person in that position. . . .  So I figured he was somebody
there to find out what happened for whoever owns the building, I guess.  And at
that time, I wasn’t sure who owned the building, the city or county or who. 
But I didn’t know anything about the [District]. . . .  But, you know, he asked
me, “What happened?  How did she—what happened?  I said, “She fell.”  [Then the
man asked,] “How did she fall?”  I said, “Well I think she stumbled on that
uneven concrete right there, and she hit the wall with her head.”  And he said,
“Well, you taking her to a hospital?”  I said “yeah.”  He said, “What hospital
are you going to?”  I said “Spohn in—in Corpus Christi,” which I had never been
to—or I didn’t say Spohn.  I said the hospital.  I didn’t know what the name of
it was. . . .  And then I quit talking to him.  I figured this guy is [sic] asking
way too many questions.

 

Ray testified that the clothing of
the man with whom he spoke did not identify himself as an employee of the
District.  

The Sullivans
filed a response to the summary judgment motion, attaching an affidavit sworn
to and signed by Ray on February 17, 2010, as well as affidavits and excerpts
from the depositions of two District employees—Juan Samuel Ramos and Charles
Potter.  Ray’s affidavit stated the following, in relevant part:

6.         Very soon after
the fall, while I was awaiting the arrival of the ambulance, a man arrived at
the scene and began to question me concerning the incident.  His questions
included repeatedly asking me my name and my wife’s name, what had happened,
whether she was hurt and what hospital she was going to.  I replied by giving
him our names, that we were married, that we were winter Texans visiting from
Iowa, that my wife had tripped entering the restrooms on the exposed lip caused
by the failed, broken and crumbled repair, that she was hurt and that we were
going to the hospital in Corpus Christi.  He said it was good we were going to
Corpus Christi.

 

7.         While we were
waiting, my wife was bleeding profusely from the head injury and was crying out
in pain.  The man who asked the questions stayed at the scene until the
ambulance left.  His concerns were more than an innocent bystander.  I can
describe the man asking the questions as being an [A]nglo male, 45-55 years
old, 5’10 – 5’11, medium to heavy set build, wearing casual clothing and a hat.

 

Ramos testified
that Ronald Roe was the “harbor master superintendent” in January 2007, and was
deceased at the time of Ramos’s deposition.[3] 
Ramos stated that he had no personal knowledge of the accident but that the day
after the accident, Roe told him that a lady had tripped and fallen near the
restroom and instructed him to “alter the place where the accident occurred to
make it less likely that someone would fall there.”[4]  

According to
Ramos, Roe generally worked out of the District’s offices which were located in
a building near the restroom where Vera tripped and fell.  Ramos described Roe
as “44 or 45” years old, “about 5’10 or 5’11,” a “casual” dresser, and “[b]etween
medium and heavier set.”  Potter described Roe as “five foot, ten [inches],
about 200 pounds.”  Potter also stated that Roe wore a hat “[e]very once in a
great while” when he “was outside and it was hot,” but that Roe “hardly was
outside his office.”  

The District
filed a response and attached an affidavit sworn to and signed by Potter on
February 19, 2010.  In his affidavit, Potter stated, 

I saw Mr. Roe virtually
every work day.  He never wore cowboy boots or a cowboy hat.  He wore
steel-toed safety shoes, which looked like dress shoes.  He wore a hat every
once in a great while—when he was outside and it was sunny and hot—and the hat he
wore was not a cowboy hat.

 

The District also filed objections to
the Sullivan’s response to its summary judgment motion.  In particular, the District
objected to Ray’s statement that the concerns of the man to whom he spoke were
“more than an innocent bystander.”  On February 25, 2010, the trial court sustained
this objection and granted the District’s motion for summary judgment without
specifying whether it was granting the motion on no-evidence or traditional
grounds.  A take-nothing judgment was entered against both of the Sullivans. 
This appeal ensued.

II.
Standards of review

            Different standards of
review apply to summary judgments granted on no-evidence and traditional
grounds.  See Tex. R. Civ. P.
166a(c), (i); Ortega v. City Nat’l Bank, 97 S.W.3d 765, 771 (Tex.
App.–Corpus Christi 2003, no pet.) (op. on reh’g).  A no-evidence summary
judgment is equivalent to a pretrial directed verdict, and we apply the same
legal sufficiency standard on review.  Mack Trucks, Inc. v. Tamez, 206
S.W.3d 572, 582 (Tex. 2006); Ortega, 97 S.W.3d at 772.  Once an
appropriate motion for no-evidence summary judgment is filed, the non-movants,
here the Sullivans, must produce summary judgment evidence raising a genuine issue of material
fact to defeat the summary judgment.  See Tex. R. Civ. P. 166a(i).  “A genuine issue of material fact exists if more
than a scintilla of evidence establishing the existence of the challenged
element is produced.”  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600
(Tex. 2004).  We do not consider any evidence
presented by the movant unless it creates a fact question.  Binur v. Jacobo,
135 S.W.3d 646, 651 (Tex. 2004); Newkumet v. Allen, 230 S.W.3d 518, 521
(Tex. App.–Eastland 2007, no pet.). 

“Less than a
scintilla of evidence exists when the evidence is ‘so weak as to do no more
than create a mere surmise or suspicion of fact.’”  Ortega, 97 S.W.3d at
772 (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 
Conversely, more than a scintilla exists when the evidence “rises to a level
that would enable reasonable and fair-minded people to differ in their
conclusions.”  Id. (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 25 (Tex. 1994)).  In determining whether the non-movant has met its burden,
we review the evidence in the light most favorable to the non-movant, crediting
such evidence if reasonable jurors could and disregarding contrary evidence
unless reasonable jurors could not.  Tamez, 206 S.W.3d at 582; City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

            In contrast, we review
the trial court’s grant of a traditional motion for summary judgment de novo.  See Provident Life & Accident Ins.
Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003); Branton v. Wood, 100 S.W.3d 645, 646 (Tex.
App.–Corpus Christi 2003, no pet.).  When reviewing a traditional summary
judgment, we must determine whether the movant met its burden to establish that
no genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215
(Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979).  The movant bears the burden of proof in a traditional motion
for summary judgment, and all doubts about the existence of a genuine issue of
material fact are resolved against the movant.  See Sw. Elec. Power Co.,
73 S.W.3d at 215.  We take as true all evidence favorable to the nonmovant, and
we indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  We will affirm a traditional summary
judgment only if the record establishes that the movant has conclusively proved
its defense as a matter of law or if the movant has negated at least one
essential element of the plaintiff’s cause of action.  IHS Cedars Treatment
Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Clear Creek
Basin Auth., 589 S.W.2d at 678. 

III.
Applicable Law

Governmental
immunity defeats a trial court’s subject-matter jurisdiction.  See Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-26 (Tex. 2004). 
The Texas Tort Claims Act (“TTCA”) waives a governmental entity’s immunity from
suit “to the extent of liability created by [the TTCA].”  Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a) (Vernon 2005).  To take advantage of this
waiver, plaintiffs must notify the governmental entity of a claim within six
months of the incident giving rise to the claim.  Id. § 101.101(a); Univ. of Tex. Sw. Med. Ctr. at Dallas v.
Estate of Arancibia, No. 08-0215, 2010 WL 4144590, at *1 (Tex. Oct. 22,
2010).  The notice must describe the damage or injury claimed, the time and
place of the incident, and the incident.  Tex.
Civ. Prac. & Rem. Code Ann. §
101.101(a).  The purpose of the formal notice provision is “‘to ensure a prompt
reporting of claims to enable the [government] to investigate while facts are
fresh and conditions remain substantially the same.’”  Colquitt v. Brazoria
County, No. 09-0369, 2010 WL 3813219, at *3 (Tex. Oct. 1, 2010) (per
curiam) (quoting City of Houston v. Torres, 621 S.W.2d 588, 591 (Tex.
1981)).  Section 101.101(c) provides an exception to the formal notice
requirement if the governmental unit has “actual notice” that “the claimant has
received some injury.”  Tex. Civ. Prac.
& Rem. Code Ann. § 101.101(c).  

In Cathey
v. Booth, the Texas Supreme Court held that actual notice to a governmental
entity requires knowledge of:  (1) a death, injury, or property damage; (2) the
governmental entity’s alleged fault or producing or contributing to the death,
injury, or property damage; and (3) the identity of the parties involved.  900
S.W.2d 339, 341 (Tex. 1995) (per curiam).  A governmental entity must have
knowledge of “the information it is entitled to be given under [section]
101.101(a) and a subjective awareness that its fault produced or contributed to
the claimed injury.”  Tex. Dep’t of Criminal Justice v. Simons, 140
S.W.3d 338, 348 (Tex. 2004).  Subjective awareness is required because the
governmental entity does not have the same incentive to investigate a matter if
it is not subjectively aware of its fault or liability.  Id.  The
determination of whether a governmental entity received actual notice is a
question of fact when the evidence is disputed, but it may be determined as a
matter of law where the evidence is insufficient to raise a fact issue.  Id.;
Alvarado v. City of Lubbock, 685 S.W.2d 646, 649 (Tex. 1985); Lorig
v. City of Mission, 629 S.W.2d 699, 701 (Tex. 1982).

IV.
Analysis

            By their sole issue, the
Sullivans contend that the trial court erred by granting summary judgment in
favor of the District because, within six months of the incident, the District had
actual notice that the Sullivans had sustained injuries.[5]  Specifically,
the Sullivans assert that Ray’s description of the man to whom he spoke after Vera’s
January 27, 2007 fall matched the description of Roe, the District’s harbormaster
superintendent, and that notice to Roe may be imputed on the District.  Because
the trial court granted the District’s hybrid motion for summary judgment
without specifying whether it was granting the motion on no-evidence or
traditional grounds, we begin by reviewing the summary judgment under the
standards of rule 166a(i).  See Ridgway, 135 S.W.3d at 600 (providing
that when a party moves for summary judgment under both rules 166a(c) and
166a(i), “[we] first review the trial court’s summary judgment under the
standards of rule 166a(i)”).  

A.        No-Evidence Motion for
Summary Judgment

“If an agent or representative receives
notice of the incident and had a duty to gather facts and report, actual notice
can be imputed to the governmental entity.”  Univ. of Tex. Health Sci. Ctr.
at San Antonio v. Stevens, No. 04-09-00579-CV, 2010 WL 3406146, at *4 (Tex.
App.–San Antonio Aug. 31, 2010, no pet.) (citing Tex. Tech Univ. Health Sci. Ctr. v. Lucero, 234 S.W.3d 158, 163, 168 (Tex.
App.–El Paso 2007, pet. denied)).  Moreover, “[a]ctual notice is not limited to a
particular official or employee of a government entity, such as a director of
risk management.”  Id. (citing Dinh v. Harris County Hosp. Dist.,
896 S.W.2d 248, 253 (Tex. App.–Houston [1st Dist.] 1995, writ dism’d w.o.j.)). 
The Sullivans’ supporting evidence filed in response to the District’s hybrid
motion for summary judgment established that in January 2007, Roe was the
“harbor master superintendent” in charge of the “overall planning and
management, construction and maintenance activities for [the District];
supervising all district personnel and operations; and operating and directing
the operation of various types of . . . work projects and
equipment engaged in the construction, repair and maintenance of [the District]
projects . . . .”  Excerpts from the deposition testimony
of Ramos, a District employee under Roe’s supervision at the time of Vera’s
alleged fall, describe Roe as “44 or 45” years old, “about 5’10 or 5’11,” a
“casual” dresser, and “[b]etween medium and heavier set.”  According to Ramos,
Roe generally worked out of the District’s offices which were located in a
building near the restroom where Vera allegedly tripped and fell.  Excerpts
from the deposition of Potter, another District employee, reveal that Roe wore
a hat “[e]very once in a great while” when he “was outside and it was hot,” but
that Roe “hardly was outside his office.”  Ramos stated in his deposition that
the day after Vera’s alleged fall, Roe told him that a lady had tripped and
fallen near the restroom and instructed him to repair the area where the lady
had fallen.

Ray’s
affidavit details a conversation that he had at the time of the alleged
accident.[6] 
Ray attested that soon after Vera’s fall, he was approached by “an [A]nglo
male, 45-55 years old, 5’10-5’11, medium to heavy set build, wearing casual
clothing and a hat.”  Ray gave his name and Vera’s name to the man, told him
that they were winter Texans from Iowa, and informed him that Vera tripped over
a broken and crumbling area of pavement as she entered the restroom.  While
they spoke, Vera “was bleeding profusely from [a] head injury and was crying
out in pain.”  Ray told the man that Vera “was hurt” and was going to be
transported to a Corpus Christi hospital.  

We conclude
that the Sullivans presented sufficient evidence to raise a genuine issue of
material fact by presenting evidence that would enable reasonable and
fair-minded people to differ in their conclusions as to whether the District, through
Roe, had knowledge:  (1) of Vera’s injury; (2) that, because of the condition
of the sidewalk, the District was at fault; and (3) of the identities of Vera
and Ray.  See Ortega, 97 S.W.3d at 772; see also Cathey,
900 S.W.2d at 341.  Because there is a genuine issue of material fact as to
whether the District had actual notice, the trial court improperly granted
summary judgment if it did so on no-evidence grounds.

B.        Traditional Motion for
Summary Judgment

We next turn
to the District’s traditional motion for summary judgment and determine whether
the District met its burden to prove that no genuine issue of material fact
exists as to actual notice and that it is entitled to judgment as a matter of
law.  See Tex. R. Civ. P.
166a(c); Sw. Elec. Power Co., 73 S.W.3d at 215; Clear Creek Basin
Auth., 589 S.W.2d at 678.  As evidence, the District presented:  (1) excerpts
from Vera’s deposition testimony stating that, at the time of her accident, Ray
spoke to a man that “may have been . . . someone from [the
District] because he had cowboy boots on and a cowboy hat”; (2) excerpts from Ray’s
deposition testimony stating that he “figured” that the man he spoke to and
whom Vera “described with the kind of western outfit on” was “there to find out
what happened for whoever own[ed] the building” that housed the restroom where
Vera had fallen; (3) excerpts from Ray’s deposition testimony stating that he “quit
talking” to the unidentified man after telling him that Vera was being taken to
the hospital because she had “stumbled on that uneven concrete right there” and
“hit the wall with her head”; (4) excerpts from Potter’s affidavit stating that
Roe “never wore cowboy boots or a cowboy hat” and, instead, “wore steel-toed
safety shoes, which looked like dress shoes.” 

Ray’s
affidavit did not allege that the man to whom he spoke wore cowboy boots or a
cowboy hat; instead, Ray’s description of the man was similar to Ramos’s and
Potter’s description of Roe.  Where, as here, the evidence is disputed, the
determination of whether the District received actual notice is a question of
fact.  See Alvarado, 685 S.W.2d at 649; Lorig, 629 S.W.2d at
701.  Thus, because there is conflicting evidence as to whether, through Roe, the
District had actual knowledge of the Sullivans’ claims, the District has failed
to establish its right to summary judgment as a matter of law.  See Alvarado,
685 S.W.2d at 649 (concluding that summary judgment was precluded where a fact
question existed as to whether or not a governmental entity had actual notice
of appellant’s injury); Lorig, 629 S.W.2d at 701 (holding that “the trial court erred in granting the
[governmental entity’s] motion for summary judgment, because there existed
material issues of fact including whether the [governmental entity] received
actual notice of the plaintiff’s injury”).  Accordingly, we conclude that the
trial court improperly granted summary judgment if it did so on traditional grounds. 
We sustain the Sullivans’ sole issue.[7]

V.
Conclusion

            Based on the foregoing, we
reverse the trial court’s order granting summary judgment and remand for
further proceedings consistent with this memorandum opinion. 

 

 

                                                                                    ________________________

                                                                                    Rogelio Valdez

                                                                                    Chief
Justice

 

 

Delivered and filed the 

6th day of January, 2011.

 









[1] Lack of pre-suit
notice under the Texas Tort Claims Act is a jurisdictional requirement that is typically
raised by a plea to the jurisdiction.  See Tex. Gov’t Code Ann. § 311.034 (Vernon Supp. 2010)
(“Statutory prerequisites to suit, including the provision of notice, are
jurisdictional requirements in all suits against a governmental entity.”); Univ.
of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia, No. 08-0215, 2010
WL 4144590, at **1-2 (Tex. Oct. 22, 2010); Colquitt
v. Brazoria County, No. 09-0369, 2010 WL 3813219, at *2 (Tex. Oct. 1, 2010)
(per curiam).  Although the District could have asserted a plea to the
jurisdiction rather than a combined traditional and no-evidence motion for
summary judgment, the District was not required to do so.  See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000) (recognizing that “[t]he
absence of subject-matter jurisdiction may be raised by a plea to the
jurisdiction, as well as other procedural vehicles, such as a motion for
summary judgment”).

 





[2] The excerpts of
Vera’s deposition demonstrate that she fractured her right femur and left
wrist.





[3] The Sullivans
attached a copy of Ronald Roe’s death certificate to their response to the
District’s motion for summary judgment.  The death certificate indicates that
Roe died on March 20, 2007, approximately two months after Vera’s accident.

 





[4]
Ramos’s affidavit details the
repairs done to the sidewalk:

The place where the sidewalk
leading to the restroom meets the slab of the restroom building had at that
time an elevation change of about one-quarter inch to one-half inch due to the
fact that the slab was slightly higher than the sidewalk. . . .  

 

To smooth out the elevation
change, I had one of my employees apply concrete grout to the sidewalk at an
incline where it met the restroom slab and smoothed it out so that there was a
smooth transition between the sidewalk and the slab.  Later, after the grout had
cured, the area of the alteration was painted yellow. . . .





[5]
The Sullivans concede that they did not provide
formal notice to the District within six months of the incident giving rise to
their claims; thus, our review focuses only on actual notice under section
101.101(c).  See Tex. Civ. Prac.
& Rem. Code Ann. § 101.101(c) (Vernon 2005).  





[6] For the first
time on appeal, the District objects to the form of Ray Sullivan’s affidavit on
the basis that it is a “sham affidavit” and should not have been considered by
the trial court as summary judgment evidence because it contradicts his earlier
deposition testimony.  See Hogan v. J. Higgins Trucking, Inc.,
197 S.W.3d 879, 883 (Tex. App.–Dallas 2006, no pet.) (providing that an
objection that an “affidavit is a sham affidavit because it contradicts [the
affiant’s] earlier deposition testimony is an objection complaining to a defect
in form of his affidavit”).  “Defects in the form of affidavits or attachments
will not be grounds for reversal unless specifically pointed out by objection
by an opposing party with opportunity, but refusal, to amend.”  Tex. R. Civ. P. 166a(f).  Thus, the
District has not preserved this argument for appellate review.  Hogan,
197 S.W.3d at 883; see also Tex.
R. App. P. 33.1(a)(1) (“As a prerequisite to presenting a complaint for
appellate review, the record must show that . . . the
complaint was made to the trial court by a timely request, objection, or
motion . . . .”).





[7] The District
also asserts that Ray claims loss of consortium and is “apparently making a
bystander claim.”  The District argues, without any citation to authority, see
Tex. R. App. P. 38.1(i), that
even if it had actual notice of Vera’s injuries, it was not on notice of Ray’s
claims, and the trial court’s summary judgment against Ray’s claims was
proper.  A loss of consortium claim is derivative of the other spouse’s
personal injury.  See Rosenzweig v. Dallas Area Rapid Transit, 841
S.W.2d 897, 898 (Tex. App.–Dallas 1992, writ denied).  Thus, because a fact
issue as to whether the District received actual notice of Vera’s injury
exists, summary judgment as to Ray’s loss of consortium claim would be
improper.  Moreover, based on our review of the Sullivans’ petition, it does
not appear that Ray has raised a bystander claim.  However, to the extent that
such a bystander claim is raised, summary judgment as to it would be improper
because “[a]lthough bystander claims are considered
independent and not derivative . . . the bystander
plaintiff cannot recover unless the injured person can recover.”  Am. Indus.
Life Ins. Co. v. Ruvalcaba, 64 S.W.3d 126, 144 (Tex. App.–Houston [14th
Dist.] 2001, pet. denied).