# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00672-CV

**Philip Cannata, Appellant**

**v.**

**Blackmon Mooring of Austin, Inc., Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY,
### NO. C-1-CV-09-007603, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Philip Cannata appeals a take-nothing summary judgment on his negligence claim against appellee Blackmon Mooring of Austin, Inc. Cannata sought damages for injuries resulting from his alleged exposure to a harmful chemical that Blackmon Mooring used during mold remediation of Cannata's workplace. We will affirm the trial court's summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

St. John Neumann Catholic Church of Austin, Texas, hired Blackmon Mooring to remediate mold in its music room and sacristy in August of 2007. As part of the remediation process, Blackmon Mooring injected a biocide called Sporicidin into the building's air system to kill mold, mildew, dust mites, bacteria, and viruses. At the same time or soon after Blackmon Mooring used Sporicidin in the church, Cannata, who asserts that he was not warned to stay away, entered the music room and stayed there for approximately twenty minutes until he learned from another

employee that the building was off limits at that time. He discovered later that the church's facilities manager had sent Cannata and the other church employees an email warning of the situation at approximately the same time Blackmon Mooring applied the Sporicidin.

Later that same day, Cannata began to feel "uncomfortable and exhausted" and starting experiencing headaches, chest tightness, shortness of breath, itchy burning skin, diarrhea, and a bitter, metallic taste in his mouth. Cannata went to see his family doctor, who noted that Cannata was "very ill" from the exposure and prescribed an inhaler and other medication. Cannata's doctor also suggested that he see an allergist, which Cannata did shortly thereafter. Although not clear from the record, it appears that Cannata experienced many of these same symptoms for at least several days after his exposure.

Cannata filed this suit against Blackmon Mooring, alleging that Blackmon Mooring had negligently exposed him to the "harmful and toxic" substance glutaraldehyde[1] on August 6, 2007, by using the glutaraldehyde-containing product Sporicidin in the music room's ventilation system immediately before Cannata entered that room. Cannata complained that Blackmon Mooring was negligent in failing to (1) place proper and adequate warning signs in the exposure area; (2) block access to the exposure area; and (3) maintain a company presence at the remediation site

---

[1] Glutaraldehyde is "a colorless, oily, liquid-chemical with a pungent odor" that can be used in various applications, including sterilizers, biocides, embalming solutions, and disinfectants. Persons exposed to glutaraldehyde can suffer throat and lung irritation, asthma and difficulty breathing, contact and allergic dermatitis, nasal irritation, sneezing, wheezing, and burning eyes and conjunctivitis. *See* Centers for Disease Control & Prevention, National Institute for Occupational Safety & Health, Workplace Safety & Health Topics, www.cdc.gov/niosh/topics/glutaraldehyde/ (last visited on June 6, 2012).

while the Sporicidin was being released. Cannata requested as damages his medical expenses, pain and suffering, mental anguish, and physical impairment.

After generally denying Cannata's claim, Blackmon Mooring filed a motion for summary judgment asserting that it was entitled to summary judgment because its evidence conclusively established that it did not use glutaraldehyde or a product containing glutaraldehyde at the St. John Neumann Catholic Church on August 6, 2007. Specifically, Blackmon Mooring asserted that its evidence conclusively showed that Blackmon Mooring used Sporicidin brand disinfectant solution in the church that day and that Sporicidin does not contain glutaraldehyde. In the alternative, Blackmon Mooring asserted that Cannata could produce no evidence that Blackmon Mooring applied any dangerous chemicals, including glutaraldehyde, to the church, that Blackmon Mooring applied any chemicals to the church that would present any inhalation hazards, or that the chemicals used by Blackmon Mooring at the church caused Cannata any personal injuries. The trial court, without specifying the grounds on which it was relying, granted Blackmon Mooring's summary judgment and ordered that Cannata take nothing on his negligence claim. It is from this summary judgment that Cannata now appeals.

**ANALYSIS**

On appeal, Cannata asserts that the trial court erred in granting Blackmon Mooring's motion for summary judgment because Blackmon Mooring failed to submit competent summary-judgment evidence conclusively proving that there were no genuine issues of material fact regarding the existence of glutaraldehyde in the biocide. More specifically, Cannata asserts that the trial court based its judgment on the alleged oral testimony it heard from Blackmon Mooring's counsel at the

3

summary-judgment hearing. Cannata also argues that he submitted competent summary-judgment evidence in response to Blackmon Mooring's motion that raised a genuine issue of material fact sufficient to defeat Blackmon Mooring's motion for summary judgment.

**Standard of review**

Usually, when a party moves for traditional and no-evidence summary judgment, as Blackmon Mooring did here, we first review the trial court's judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166(a)(i). Here, however, we will review the traditional summary-judgment grounds first because they are dispositive of Cannata's appeal. *See Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied); *see also* Tex. R. App. P. 47.1 (requiring "written opinion that is as brief as practicable," addressing all issues that are raised and necessary to final disposition).

The standards for reviewing a motion for summary judgment are well established. We review the trial court's summary judgment rulings de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a motion for traditional summary judgment, the movant must show that there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In deciding whether there is a disputed material-fact issue precluding summary judgment, we take as true proof favorable to the non-movant, and we indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). A defendant can establish his

4

entitlement to summary judgment as to a cause of action asserted against him by conclusively negating at least one essential element of the cause of action or conclusively establishing each element of an affirmative defense to the cause of action. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). If the movant can show that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a fact issue to avoid summary judgment. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). If the summary-judgment evidence set out in the motion and response shows that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law, we will affirm the summary judgment. *See* Tex. R. Civ. P. 166a(c); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (citing *Nixon*, 690 S.W.2d at 548). Further, because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court are meritorious. *See Knott*, 128 S.W.3d at 216.

**Blackmon Mooring's summary-judgment evidence**

To prove an action for negligence, a plaintiff must establish "'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'" *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *Love*, 92 S.W.3d at 457). Cannata's live pleading and discovery responses assert that Blackmon Mooring owed him a duty to exercise ordinary care in its use of "dangerous and harmful chemicals," specifically the glutaraldehyde-containing product Sporicidin. He claims that Blackmon Mooring breached that duty by negligently exposing him to glutaraldehyde and that, as a result of that exposure to glutaraldehyde, he incurred injuries. Thus, Blackmon Mooring as defendant here would be entitled

5

to summary judgment on Cannata's negligence claim as specifically pleaded—i.e., duty to exercise ordinary care in using glutaraldehyde and damages caused by exposure to glutaraldehyde—if its summary-judgment evidence conclusively establishes that it did not use glutaraldehyde or a product containing glutaraldehyde at St. John Neumann Catholic Church on August 6, 2007. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995) (holding that defendant "need not . . . show that the plaintiff cannot succeed on any theory *conceivable* in order to obtain summary judgment; he is only 'required to meet the plaintiff's case as pleaded.'" (emphasis in original) (quoting *Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751, 759 (Tex. 1976)).

Blackmon Mooring's summary-judgment evidence consists of an affidavit from its commercial manager, Mark Roth, a "Material Safety Data Sheet" (MSDS)[2] for "Sporicidin Brand Disinfectant Solution," and Cannata's responses to Blackmon Mooring's requests for disclosure. Generally stated, Roth's affidavit establishes that Blackmon Mooring used "Lysol Brand concentrate, Sporicidin brand disinfectant solution," and a liquid dishwashing detergent such as Dawn, Ivory, or Joy, during its mold remediation of St. John Neumann Catholic Church in August of 2007. Roth further states that Blackmon Mooring did not use any form of glutaraldehyde or any products containing glutaraldehyde at the church. Instead, he explains, Blackmon Mooring used only the EPA-registered biocide Sporicidin disinfectant, which he asserts does not contain glutaraldehyde.

---

[2] A Material Safety Data Sheet is a written or printed document that provides information about the properties and potential hazards of a particular product or material. The Occupational Safety and Health Administration of the United States Department of Labor requires chemical manufacturers and importers to obtain or develop an MSDS for each hazardous chemical they produce or import, and employers are required to have an MSDS in the workplace for each hazardous chemical which they use. *See* OSHA Toxic and Hazardous Substances Rule, 29 C.F.R. § 1910.1200(c),(g) (2012).

In support of this assertion, Ross attached to his affidavit a copy of the MSDS for "Sporicidin Brand Disinfectant Solution (EPA Reg. No. 8383-3)," which does not list glutaraldehyde as a component of Sporicidin. Roth's affidavit further explains that while the product "Activator for Sporicidin" does contain glutaraldehyde, Blackmon Mooring did not use Activator for Sporicidin during its work at St. John Neumann Catholic Church. In sum, Blackmon Mooring's evidence meets its summary-judgment burden to demonstrate that Blackmon Mooring did not expose Cannata to glutaraldehyde because it did not use glutaraldehyde or a product containing glutaraldehyde at St. John Neumann Catholic Church on August 6, 2007. And by doing so, Blackmon Mooring negated an essential element of Cannata's negligence claim, thus entitling it to summary judgment. *See id.* (holding that defendant is entitled to summary judgment if it disproves at least one element of claim specifically pleaded by plaintiff); *see also* Tex. R. Civ. P. 166a(c) ("A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.").

**Cannata's summary-judgment evidence**

Once Blackmon Mooring, as the summary-judgment movant, established its right to summary judgment, the burden shifted to Cannata, the nonmovant, to present evidence raising a fact issue regarding his exposure to glutaraldehyde or to some other claim that might be brought within the general language of his petition. *See id.* ("When a plaintiff's petition alleges specific claims, but does not limit itself to those claims, a defendant is entitled to summary judgment if he disproves at least one element of each claim specifically pleaded unless plaintiff in response raises a genuine

7

issue of material fact as to some other claim that might be brought within the general language of the petition."). In his response to Blackmon Mooring's motion for summary judgment, Cannata merely re-asserted his allegation that Blackmon Mooring used a product containing glutaraldehyde at St. John Neumann Catholic Church on August 6, 2007, and attached the following exhibits in support of that allegation:

Exhibit A: Affidavit of Philip Cannata;

Exhibit B: Letter from Mark Roth to St. John Neumann Catholic Church;

Exhibit C: Blackmon Mooring's answers to Cannata's request for production;

Exhibit D: MSDS for Sporicidin Sterilizing and Disinfectant Solution Activator;

Exhibit E: Verification affidavit of Bryan Zander (Blackmon Mooring employee) regarding Blackmon Mooring's answers to Cannata's interrogatories;

Exhibit F: Audio recording of Mark Roth (excluded from evidence and not included in the appellate record);

Exhibit G: Information regarding Sporicidin Disinfectant Solutions & Spray from www.mzgroup.com website (excluded from evidence);

Exhibit H: Information regarding Sporicidin Disinfectant from www.steam-brite.com website (excluded from evidence);

Exhibit I: Information regarding Sporicidin Disinfectant from www.steam-brite.com website (excluded from evidence);

Exhibit J: Price guide for Sporicidin Disinfectant and Sterilizing Solution, including product description, from www.polarzone-nw.com website;

Exhibit K: Affidavit from Rita Cannata;

Exhibit L: Audio recording of St. John Neumann Catholic Church's employee (excluded from evidence and not included in the appellate record);

8

Exhibit M:     Symptoms associated with glutaraldehyde exposure from www.mcs-america.org website (excluded from evidence);

Exhibit N:     Letter from Andrew Weary, M.D.;

Exhibit O:     Final Report of Maritza Navarro, M.D.;

Exhibit P:     August 6, 2007 email from Kelly Montgomery of St. John Neumann Catholic Church (excluded from evidence);

Exhibit Q:     Information regarding air duct cleaning printed from www.healthairductcleaning.org (excluded from evidence); and

Exhibit R:     Information regarding anti-microbial treatments printed from www.ductpro.com (excluded from evidence).

As indicated in parentheses above, the trial court excluded exhibits F, G, H, I, L, M, P, Q, and R. Cannata does not challenge these exclusions on appeal. We may not consider stricken evidence when reviewing a summary judgment. *See Esty v. Beal Bank, S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.) ("Evidence which has been excluded by written order or ruling of the trial court is not part of the summary judgment evidence to be considered.").

Cannata's affidavit states that he worked as the music director at St. John Neumann Catholic Church during August 2007, that he entered the church's music room at 4:55 p.m. on August 6, 2007, and that on the night of August 6, 2007, his lips burned and he had a bad taste in his mouth that lasted several days. Cannata's affidavit also establishes that on August 7, 2007, he recorded a conversation he had with Mark Roth, a Blackmon Mooring manager, and a separate conversation with his son and the church's business manager, and that copies of those recordings were attached to his summary-judgment response. Cannata's affidavit further avers that exhibits G,

H, I, J, M, Q, and R to his response are copies of pages he personally obtained from various websites on the internet. Cannata's affidavit provides no additional information.

Cannata's exhibit B consists of two letters from Blackmon Mooring to St. John Neumann Catholic Church. The first letter, dated November 28, 2007, establishes that on August 6, 2007, between approximately 12:00 pm and 5:00 pm, Blackmon Mooring began cleaning and disinfecting the HVAC unit and ducts of the church's music room, dressing area, hallway, and a bathroom. The second letter, which is undated, establishes that Blackmon Mooring had visited the church on July 30, 2007, to inspect certain areas of concern and had later submitted a proposal "to clean the HVAC system, dehumidify space, and wipe down structure and contents with [sic] utilizing heap air scrubbers." The letter explains that Blackmon Mooring cleaned the HVAC system and installed a dehumidifier and air scrubbers on August 6, 2007, and that the next day Blackmon Mooring employees cleaned the structure and its contents. The undated letter further specifies that Blackmon Mooring used HEPA vacuums and air-whip tools to clean the HVAC system and its related components, after which "an epa [sic] registered biocide-Sporicidin" was "fogged into [the] air system to kill mold, mildew, dust mites, bacteria and virus[es]." It explains the safety precautions for Sporicidin—i.e., that pets and people should stay out of the affected area for half an hour to one hour—and offers that Sporicidin "is a product that has been safely used for many years and is commonly used in air systems and mold remediation jobs . . . in hospitals, universities, state agency buildings, public buildings, allergy doctor's homes and businesses for many years." Finally, the letter states that the "MSDS sheets on [S]poricidin" were attached to the letter. Although Cannata did attach MSDS sheets as exhibits to his response, they are not attached to exhibit B in the record.

10

Exhibit C, which is Blackmon Mooring's written responses to Cannata's requests for production, states that Blackmon Mooring intended to produce documents in its possession that were responsive to Cannata's requests, including the following of possible relevance here:

- Please provide an MSDS for any aerosol product used by [Blackmon Mooring] in August 2007 that contains "glu[ta]raldehyde."

- Please provide a document that identifies the manufacturer of any aerosol product used by you in August 2007 that contains "glutaraldehyde."

- Please provide an MSDS for any aerosol product used by you in August 2007 at St. John Neumann Catholic Church.

In the record before us, there are no attachments to these written responses. Presumably in response to these requests, however, Cannata asserts that Blackmon Mooring produced copies of MSDS sheets for "Sporicidin Brand Disinfectant Solution (EPA Reg. No. 8383-3)" and "ACTIVATOR for Sporicidin Sterilizing and Disinfecting Solution," both of which Cannata attached as exhibit D to his summary-judgment response. In addition to other matters, the MSDS for Sporicidin disinfectant solution indicates that it is registered with the EPA and that its ingredients are "Phenol/Sodium Phenate." Regarding the health hazards presented by this product, the MSDS provides as follows:

| Effects of Overexposure | Emergency and First Aid Procedures |
|---|---|
| Inhalation: N/A. | Inhalation: N/A. |
| Skin: May cause mild irritation. | Skin: N/A. |
| Ingestion: May cause nausea and vomiting. | Ingestion: If large amount is ingested, contact a physician. |
| Eye: May cause irritation on direct contact. | Eye: Immediately flush with water. If necessary, contact a physician. |

11

| | |
|---|---|
| EPA Signal Word: Caution | |
| Carcinogenicity: Not listed as a carcinogen by NTP, LARC monography or OSHA | |

Finally, the MSDS for Sporicidin disinfectant provides that no control measures must be taken for respiratory protection, gloves are recommended, but other protective clothing and equipment is not required, and a normal HVAC system is sufficient for ventilation.

The MSDS for "ACTIVATOR for Sporicidin Sterilizing and Disinfecting Solution" does not refer to the EPA or indicate that this particular product is registered with the EPA. It does, however, show that this Sporicidin product contains glutaraldehyde and suggests that certain types of contact with glutaraldehyde pose health hazards. For example, it is "moderately toxic" and may cause "chemical burns of the mouth, throat, esophagus, and stomach when swallowed," its "vapor may be irritating to the respiratory tract, causing stinging sensations in the nose and throat, discharge from the nose, possibly bleeding from the nose, coughing, chest discomfort and tightness, difficulty with breathing, and headache," and that contact with the skin "may cause slight irritation with itching and local redness."

Cannata's exhibit E is a one-page verification affidavit by Bryan Zander stating that he "has read the foregoing Answers to Plaintiff's First Set of Interrogatories to Blackmon Mooring of Austin, Inc. and the answers are true and correct and within his[] personal knowledge." It offers no additional information other than the date and the name of the notary.

Cannata's exhibit J is a document titled "Sporicidin Disinfectant and Sterilizing Solution Price Guide" that includes a product description. This exhibit shows that "Sporicidin

12

Disinfectant and Sterilizing Solution" is used by medical and dental professionals in hospitals, clinics, nursing homes, office, and other places to kill pathogenic and odor-causing organisms. It also shows, in addition to the prices for each type of product, that Sporicidin is sold in various forms, including towelettes, aerosol spray, pump spray, and solution. Of relevance here, exhibit J shows that Sporicidin Disinfectant and Sterilizing Solution is used to clean HVAC air ducts and for mold remediation. Also, it shows that of the eight Sporicidin products for sale on this particular website, two Sporicidin products—"Sporicidin Indicator Kit" and "Sporicidin Sterilizing and High Level Disinfectant Solution"—contain glutaraldehyde, and the description for the indicator kit shows that the glutaraldehyde is in test strips. Of note, this exhibit does not show that Sporicidin Disinfectant contains glutaraldehyde, but it does indicate that only Sporicidin disinfect is "registered" with the EPA. The document does not refer to Blackmon Mooring.

Exhibit K is an affidavit from Cannata's wife regarding his symptoms between August 6 and August 15, 2007. It does not address Cannata's allegations regarding glutaraldehyde and Blackmon Mooring. Similarly, exhibits N and O are reports from Cannata's doctors regarding his symptoms and treatments after August 6, 2007. These two exhibits, however, contain some additional information regarding Cannata's alleged exposure on August 6, 2007. Specifically, exhibit N states that Cannata "was exposed to a chemical substance 'Sporicidin' which was used in the ventilation system" at the church and that Cannata was not aware "of this toxic exposure." Exhibit O indicates that Cannata told his allergist that he was exposed to glutaraldehyde at his work.

Viewed in the light most favorable to Cannata, Cannata's summary-judgment evidence fails to raise a question of fact or controvert Blackmon Mooring's summary-judgment

13

evidence to the contrary regarding Blackmon Mooring's use of glutaraldehyde at St. John Neumann Catholic Church on August 6, 2007. At best, Cannata's evidence establishes only that Blackmon Mooring sprayed a Sporicidin product into the music room's air system on August 6, 2007, and that Blackmon Mooring produced in response to various discovery requests an MSDS sheet for a Sporicidin product—"ACTIVATOR for Sporicidin Sterilizing and Disinfecting Solution"—that contains glutaraldehyde. Although two exhibits show that Cannata told at least one of his doctors that he was exposed to glutaraldehyde, we may not consider this assertion as competent summary-judgment evidence because it is conclusory. *See* Tex. R. Civ. P. 166a(f) (requiring that evidence in summary-judgment affidavits be admissible in evidence); *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (citing to rule 166a(f) for same proposition). We also note that Cannata's own evidence shows that Blackmon Mooring used "an epa [sic] registered biocide-Sporicidin" at the church and that, while ACTIVATOR contains glutaraldehyde but is not registered with the EPA, "Sporicidin Brand Disinfectant Solution" is registered with the EPA and does not contain glutaraldehyde.

Cannata argues that his evidence, when viewed as a whole, raises a question of fact regarding whether Blackmon Mooring used a product containing glutaraldehyde. Specifically, he alleges that because Blackmon Mooring's "project file" for the St. John Neumann Catholic Church job contained MSDS sheets for both the non-glutaraldehyde Sporicidin and the glutaraldehyde Sporicidin and because Blackmon Mooring's letter to the church refers to more than one MSDS sheet, we can infer that Blackmon Mooring used a product containing glutaraldehyde. But at best, Cannata's evidence merely shows that Blackmon Mooring used "an" EPA-registered biocide called

14

Sporicidin as a fog in the church air system to kill mold, mildew, dust mites, and that it attached "MSDS sheets on [S]poricidin" to its letter. It constitutes less than a scintilla of probative evidence and, as such, is no evidence that Blackmon Mooring used glutaraldehyde at the church.

Even assuming, as Cannata asserts without any support in the evidence, that the MSDS "sheets" referenced in the letter are the MSDS sheets for Sporicidin Disinfectant Solution and Activator for Sporicidin Sterilizing and Disinfecting Solution, those MSDS sheets conclusively show that only Sporicidin Disinfectant Solution is EPA registered: "Identity: Sporicidin Brand Disinfectant Solution (EPA Reg. No. 8383-3)" versus "Identity: ACTIVATOR for Sporicidin Sterilizing and Disinfecting Solution." Thus, we can only reasonably infer from this evidence that (1) Blackmon Mooring used *an* EPA-registered Sporicidin product at the church; (2) Blackmon Mooring attached to its letter MSDS sheets for Sporicidin products; (3) the Sporicidin disinfectant is EPA registered and does not contain glutaraldehyde; and (4) the ACTIVATOR contains glutaraldehyde and is not EPA registered. At most, this creates no more than a mere surmise or suspicion that Blackmon Mooring used ACTIVATOR at the church.

Cannata also asserts that the trial court relied on oral, and allegedly false, testimony from Blackmon Mooring's attorney regarding the purpose of including the MSDS sheets for the Sporicidin product that includes glutaraldehyde. While Cannata is correct that a trial court's summary judgment must be based upon written pleadings and attached proof, not live testimony, *see* Tex. R. Civ. P. 166a(c) ("No oral testimony shall be received at the hearing."), there is no indication in the record that Blackmon Mooring's attorney testified in an evidentiary fashion at the summary-judgment hearing; rather, it appears that he simply argued his client's case. But even if

15

the trial court had improperly relied on oral testimony, our review of the trial court's summary judgment is de novo, which means that we independently assess the summary-judgment evidence anew to determine whether a question of fact exists. And in our de novo review of the trial court's summary judgment, we are likewise limited by the rules to the competent summary-judgment evidence attached to the summary-judgment motion and response. *See id.* We may not and do not consider oral testimony adduced at the summary-judgment hearing. As such, whether the trial court considered the attorney's argument as evidence does not affect our decision here that Blackmon Mooring's summary-judgment evidence established that it did not use glutaraldehyde at St. John Neumann Catholic Church, thus negating at least one element of Cannata's negligence cause of action, and that Cannata's summary-judgment evidence did not raise a question of fact regarding Blackmon Mooring's use of glutaraldehyde at St. John Neumann Catholic Church.

Accordingly, we overrule Cannata's issue on appeal.

### CONCLUSION

Having overruled Cannata's sole issue on appeal, we affirm the trial court's judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:  June 20, 2012

16